[L. A. No. 261. In Bank.—May 27, 1899.]

W. L. ARCHER, Appellant, v. DANIEL FREEMAN et al., Respondents.

Fraud—Action for Damages—Statute of Limitations—Discovery—Means of Knowledge.—An action for damages for fraudulent representations made with respect to lands purchased by the plaintiff from the defendant is barred within three years after the plaintiff discovered or had the means of knowledge of the alleged fraud, and was put upon inquiry concerning the same.

Id.—Misrepresentations—Building of College—Donation—Laches—Running of Statute.—Where the fraud complained of consisted of misrepresentations as to the immediate building of a college, and as to a donation of one hundred thousand dollars made by the defendant for that purpose, and the plaintiff, as a man of reasonable caution and observation, ought to have known that the representations were false, and that the least inquiry would have shown their falsity, the failure to make such inquiry is laches, and the statute of limitations begins to run when the fraud ought reasonably to have been discovered by proper inquiry.

Id.—Assignment—Right of Action for Fraud.—A mere assignment of a pure naked right to bring an action for fraud, unconnected with any property or thing which had itself a legal existence and value, independent of the right to sue for fraud, is void. A mere right to complain of fraud is not assignable.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lucien Shaw, Judge.

The facts are stated in the opinion of the court.

Murphey & Gottschalk, and Joseph Kinley, for Appellant.

White & Monroe, and Cochran & Williams, for Daniel Freeman, Respondent.

Edwin H. Lamme, Lamme & Wilde, and Sheldon Borden, for Centinela-Inglewood Co., Respondent.

McFARLAND, J.—This action is brought to recover damages alleged to have been sustained by plaintiff through certain

alleged misrepresentations made by defendants with respect to certain lands at Inglewood, in Los Angeles county, purchased by plaintiff from defendants. There is also a second count in the complaint for damages alleged to have been sustained by one Thompson under conditions similar to those stated in the first cause of action, it being averred that Thompson assigned his cause of action to plaintiff. After plaintiff had introduced all his evidence and rested, the defendants moved for a nonsuit, which was granted. Judgment was rendered for defendants, and plaintiff appeals from the judgment upon the judgment-roll and a bill of exceptions. In their answer the defendants denied the material averments of the complaint, and also set up the statute of limitations and laches on the part of the plaintiff.

The motion for a nonsuit was based upon numerous grounds, among others the statute of limitations and laches; and from the opinion of the court below, which is attached to the brief of respondents, it appears that the court granted the nonsuit mainly upon the two grounds last above stated. If the nonsuit was properly granted upon those grounds, it is not necessary to critically examine the other points made in the case. And we think that the court correctly granted the nonsuit upon the grounds aforesaid.

The plaintiff commenced negotiations for the purchase of the land in question in November, 1887, and the transaction was completed in January, 1888, at which time he paid the purchase money and received a deed of conveyance of the land. This action was commenced June 25, 1894, which was between six and a half and seven years after the alleged fraudulent misrepresentations and promises which are alleged to have been made and given at the time of the purchase. Therefore the statute of limitations had run more than twice from the time of the alleged frauds until the filing of the complaint, unless under section 338 of the Code of Civil Procedure there was no discovery by plaintiff of the facts constituting the alleged frauds until within three years next preceding the commencement of the action. However, it is the clearly established law that in such a case a party must be held to have had knowledge of the alleged fraud whenever the means of knowledge existed and the circumstances were such as to put him on inquiry (*Moore v. Boyd*, 74

Cal. 171, and cases there cited; *Lataillade v. Orena,* 91 Cal. 578; 25 Am. St. Rep. 219; *Bills v. Silver Min. Co.,* 106 Cal. 9); therefore, if plaintiff had the means of knowledge and was put upon inquiry as to the alleged frauds more than three years before the commencement of the suit, the action is barred.

The frauds relied on consist of certain alleged representations made by the defendants, principally through their alleged agents, with respect to certain improvements that were going to be made and certain things that were going to be done in connection with the townsite of Inglewood, recently laid out, in which the lots of land sold were situated. It is averred in the complaint that defendants falsely represented that extensive arrangements had been made for irrigating the land; that extensive parks, gardens, walks, et cetera, would be constructed, and particularly that a college would be built on the grounds, and that the defendant Freeman "had donated" one hundred thousand dollars in cash for the building of the college, and that the college "was to be commenced and prosecuted to the finish." But the main frauds relied on were the alleged promise that the college building would be immediately erected, and the alleged misrepresentation that Freeman had donated one hundred thousand dollars for that purpose. The other alleged misrepresentations are not much dwelt on by counsel for appellant, and need not be further considered. The plaintiff averred and testified that he had daughters and other young ladies under his charge whom he wished to send to the college, and that the building of the college was the main inducement to his purchase of the land; and upon his own statement he expected the college to be speedily erected and put in running order, so that he might have the advantage of sending his daughters and wards there to be educated. The alleged misrepresentations were made by several different firms of real estate dealers, some of them residing in Los Angeles, a few miles from Inglewood, others of them residing at Pasadena, also in that general neighborhood, and others residing at Inglewood itself. These real estate agents had advertisements and maps upon which there were pictures of a large college building "with turrets." It is denied by the defendants that these agents had any authority to make such representations, but for the purposes of this opinion that question need

not be considered.    It sufficiently appears that as early as 1888, and certainly in April, 1891, the plaintiff, as a man of reasonable caution and observation, ought to have known that said alleged representations, if made, were false, and that the least inquiry would have demonstrated their falsity.    In the latter part of 1887, or in the first part of 1888, there were foundations laid for a college building, but work thereon continued for only two or three months, and was then entirely abandoned.    No more work was ever done toward the erection of the college, and it was quite apparent that no college was to be built.    The plaintiff had his legal residence in the state of Pennsylvania, but during all the years from 1887 to 1894, when this suit was commenced, he spent several months each year at and near Inglewood, and was an observer of the condition of things at the latter place.    He and his assignor, Thompson, had purchased from the defendants some other land at Inglewood, which they had not entirely paid for, and being pressed for payment in the spring of 1891, they were evidently suspicious that no college was to be built, and made some efforts to avoid the last payments on said land.    They finally, however, in April, 1891, settled their payment on said land by a compromise in which Freeman released a considerable amount of the money due.    Before that settlement plaintiff and Thompson had some conversation with Freeman, and that was the only occasion in which it was claimed that Freeman himself ever made any promises or representations. The substance of the conversation was that they asked Freeman if the college would ever be built, and his reply was that it was his belief that it would be.    But as to the most important alleged misrepresentation, namely, that Freeman had donated one hundred thousand dollars in money for the building of the college, they never made of him any inquiry.    Neither did they make any inquiry about said one hundred thousand dollars of any person who could have given them correct information upon the subject.    The statement which they claim that defendant's alleged agents made to them was simply that Freeman had donated this hundred thousand dollars; but no donee was named, nor did the plaintiff ever endeavor to find out who the donee, if any, was.    Upon the maps presented by the agents it appeared that the land where the college was to be built belonged to the

"University of Southern California," who might well be the donee, if there were any, of the said money; but no inquiry was ever made of said university or of the president thereof, who was known to plaintiff, as to whether any money had ever been delivered to them for that purpose, nor was there any inquiry made by plaintiff of anyone as to who the donee of this great donation was. Even if. he was as childlike, innocent, unsuspicious and unable to cope with wide-awake western people as his counsel represents Pennsylvanians to be, still it is difficult to believe that he was so unsophisticated as to have had no suspicion that the alleged hundred thousand dollar donation was a myth; and the fact that there was not to be any college there at which he could educate his daughters and wards must have forced itself on his observation. This case furnishes another illustration of the reasons upon which the statute of limitations and the doctrine of laches are founded, namely, "the probability that during the course of many years witnesses will die and recollections of events long past will become indistinct in the memories of the living"; for it appears that many persons who, if living, would be important witnesses as to the alleged fraudulent misrepresentations and false promises upon which the action is founded, had died before it was commenced.

As to the second count of the complaint, the considerations above stated apply as well to the conduct of the assignor, Thompson—even if the assignment could be considered as valid; but the alleged assignment was of a pure, naked right to bring an action for fraud unconnected with any property or thing which had "itself a legal existence and value, independent of the right to sue for fraud," and was therefore void. A mere right to complain of fraud is not assignable. (*Emmons v. Barton,* 109 Cal. 662; *Whitney v. Kelley,* 94 Cal. 146; 28 Am. St. Rep. 106; *Sanborn v. Doe,* 92 Cal. 152; 27 Am. St. Rep. 101.)

Under the foregoing views, which are elaborated in the opinion of the learned judge of the trial court, it is unnecessary to discuss the other matters argued in the briefs of counsel.

The judgment is affirmed.

Henshaw, J., Garoutte, J., Harrison, J., and Van Dyke, J., concurred.