[S. F. Nos. 2259, 2260.    Department One.—September 19, 1902.]

## A. I. SMITH, Appellant, v. PACIFIC BANK et al., Respond-ents.

SPECIFIC PERFORMANCE—SALE OF BONDS BY BANK—JUDGMENT DECLAR-
ING TRUST—INSUFFICIENT COMPLAINT.—In an action to enforce
specific performance of a contract by a bank to sell its interest in
the bonds of an electric road to the plaintiff, a complaint merely
showing a decision rendered prior to the agreement, and subsequent
findings and entry of judgment, declaring an alleged prior sale of
the bonds by the bank to its president to be in trust for the bank,
subject to certain payments, but not alleging any final judgment
as to the title of the bonds, or that there is any final judgment,
or any subsisting or live judgment in favor of the bank, or any

subsisting interest of the bank therein, to be assigned to the plaintiff, shows the title to the bonds remaining in the president of the bank, and not in the corporation, and does not state a cause of action in favor of the plaintiff.

ID.—EQUITY MAXIM—IDLE ASSIGNMENT OF JUDGMENT.—A court of equity will not do an idle thing, and will not decree that the bank shall make an assignment of a judgment unless it be shown that there is a subsisting judgment to assign upon which its decree may act.

ID.—RECITAL OF DECISION—PENDING LITIGATION—PERSONAL RIGHT OF ACTION FOR FRAUD—ASSIGNMENT.—The recital in the contract of sale of the bonds to the plaintiff, that the court had decided that the bonds should be sold and the proceeds paid in part to the president of the bank and in part to the bank, shows no final determination of the title to the bonds; and where there was at the date of the contract no judgment which could form the subject of sale, and the bank was only at that date the owner of a personal right of action to avoid the title to the bonds, based upon the ground of fraud, which was not assignable, the litigation then pending was foreign and immaterial to this case.

APPEALS from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing an injunction. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

John D. Pope, J. A. Stevens, John H. Durst, Linforth & Whitaker, and W. T. Baggett, for Appellant.

E. D. Sawyer, for Pacific Bank, Respondent.

Roger Johnson, for S. G. Murphy, J. W. McDonald, and First National Bank, Respondents.

GAROUTTE, J.—This action is in the nature of specific performance. At the commencement of the action the court granted an order upon the defendants to show cause why an injunction should not issue, with a restraining order in the mean time. At the hearing upon this order to show cause the court denied the motion for an injunction and dissolved its restraining order. A demurrer to the complaint was afterwards sustained, and thereupon judgment was rendered in favor of the defendants. The present appeals are from the order refusing the injunction and from the judgment. The

questions before the court arise upon the sufficiency of the complaint. Many matters are raised by the demurrer, but it will only be necessary to consider a single proposition advanced by respondents, and in its consideration the following allegations of the pleading become material.

In substance, they are as follows: That upon August 1, 1895, the directors of the Pacific Bank sold to J. M. McDonald, then president of said bank, one hundred and fifty bonds of a certain electric railroad; that upon the fourth day of February, 1896, one Dundon, a depositor in said bank, commenced an action against the bank, its directors, and said McDonald. The complaint then proceeds: "That said action was commenced by said P. F. Dundon, as said depositor, on behalf of himself and all other depositors in said Pacific Bank; that such proceedings were thereafter had in said action and court that a judgment and decree was duly given and made therein, adjudging that said J. M. McDonald held said bonds, and all his interest therein, in trust for the Pacific Bank, subject to certain payments, and further adjudging, as in said decree provided, a copy of which decree is hereunto attached and marked 'Exhibit A,' and hereby expressly referred to and made a part hereof"; that upon September 3, 1898, the Pacific Bank entered into a contract of sale with this plaintiff whereby it agreed to sell to him all its right, title, and interest and equity in and to said one hundred and fifty bonds, and all its equity and interest in the judgment aforesaid, for the sum of six thousand dollars. The plaintiff therefore seeks against the bank a specific performance of the aforesaid agreement. The original complaint in this case was filed February 20, 1899.

Let us first look at the Dundon judgment, viewed in the light of the fact that plaintiff is now in a court of equity seeking relief, and, therefore, subjects himself to all the principles by which courts of equity are governed. Now, he asks to have the interest of the bank in a certain judgment assigned to him. Yet he does not allege that the bank has an interest in the judgment, or even that there is such a judgment. To be sure, he alleges that there was such a judgment at a certain time, but there is no attempt to allege that it is now an existing, live judgment. A court of equity will not do an idle thing, and it will not decree that the bank shall make an assignment of a

judgment unless it be shown that there is a judgment to assign—a judgment for its decree to act upon. It is not inconsistent with the allegations of the complaint to assume that this judgment was vacated and set aside and the whole litigation dismissed long prior to the commencement of this action.

As to the Dundon litigation, the remaining question presents itself: Did the plaintiff, by reason of the Dundon judgment, acquire an interest in the one hundred and fifty bonds, considered in connection with his contract with the bank? The question last suggested can only be answered by locating the ownership of the bonds at the time he attempted to purchase them, and in dealing with this question we fail to appreciate the importance claimed for the Dundon litigation. It is not shown that that litigation ever resulted in a final judgment as to the title of the bonds, or in a final judgment of any kind. As already suggested, there is no allegation in the pleading that even the semblance of a judgment was in existence when this complaint was filed; and there is not even an allegation showing that the litigation was still pending at that time. *Non constat* but that it has all been dismissed, and thus has gone forever. In other words, there is a total failure of allegation placing the title of these bonds in the bank as a result of the Dundon litigation. Tested by the pleading, the title of the bonds as between McDonald and the bank cannot be said to be *res adjudicata* by reason of the Dundon litigation. Hence that litigation did not result in vesting the title of the bonds in the bank, and therefore gave the bank no title therein which could be transferred to plaintiff. The agreement of sale from the bank to the plaintiff was made September 3, 1898, and recites that at that time there had been no judgment entered in the Dundon suit; and it appears from the copy of the judgment annexed to the complaint that the court did not make its decision in the cause until the eighth day of September. On that day it made its findings and directed the entry of judgment. The judgment was not, however, signed by the judge until October 7th, and was entered of record the next day. The fact recited in the agreement of sale, that Judge Seawell had decided that the bonds should be sold and the proceeds paid in part to McDonald and in part to the Pacific Bank, was not of itself a determination of the ownership of

the bonds, and was of no legal effect as a judgment in the cause. Until the court had made its decision the cause was pending and undetermined. There was therefore, at the time the agreement of sale was made, no judgment which could form the subject of a sale, and the instrument then executed was limited in its operative effect to the bonds therein referred to. For these reasons the Dundon litigation, as presented by the pleadings, is a foreign and immaterial element in the case.

In view of what has been said, there is left the single allegation in the complaint to the effect that the directors of the bank sold to its president, J. M. McDonald, one hundred and fifty bonds of a certain electric railroad. By that allegation the pleader has placed the title to these bonds in J. M. McDonald, and it would seem to follow that when this plaintiff attempted to purchase the bonds the bank had no interest or title therein to sell, and necessarily plaintiff could get no title by such a purchase. If there was an allegation in the pleading showing the transfer to McDonald to be void, then the case would be different, for then the bank would have a substantial property in the bonds which would be the subject of sale. But at most this sale to McDonald was only voidable. Construing the pleading against the pleader, possibly it may not be said to be even voidable, for perchance it was ratified by the stockholders, and such an act would render it perfectly valid. But even conceding the sale to McDonald to be voidable, still it has not been avoided. A voidable sale of these bonds, until voided, vests the title in the purchaser and ousts the title of the seller as fully and completely as though the sale was valid in all particulars. Again, the plaintiff is a stranger to that sale, and if McDonald and the bank and all its beneficiaries are satisfied with it, it is not for him to complain.

In view of what has been said, the bank had no property interest in the bonds at the time it attempted to sell them to plaintiff, and therefore plaintiff by his contract of purchase secured no title thereto. At that time, conceding the sale to McDonald to be voidable at the instance of the bank, then the bank had a right of action to set it aside and nothing more. That right of action was personal to the bank, and therefore not assignable to plaintiff. It was a right based upon fraud, and such a right is not a marketable commodity. (*Emmons*

v. *Barton,* 109 Cal. 666.) Appellant relies upon this case to support his contention, but it does not help him; for there the court declared the facts to be: "In the case at bar the things assigned were money claims against an estate which had been allowed by the executrix, and were really, in effect, judgments. They had legal existence and value in themselves, were capable of enforcement by ordinary methods, and were proper objects of sale and assignment." The question here under discussion was fully considered in *Whitney* v. *Kelley,* 94 Cal. 146,[1] and the conclusion there declared, and the authorities there cited, support the conclusion to which we have here arrived. In that case a judgment was rendered against certain parties quieting title to a tract of land. Thereafter the same parties conveyed the land to Whitney; and then Whitney, by a bill in equity, attempted to set aside the said judgment, upon the ground that it was procured by fraud. It was held that the deed to Whitney conveyed no title to the land, and that the right to bring the action to set aside the judgment for fraud was not assignable, such character of assignments being forbidden as against public policy. The court sees no difference in its application when applying this principle of law to a judgment and when applying it to a conveyance of real property, or an assignment or transfer of personal property.

*Crocker* v. *Bellangee,* 6 Wis. 645,[2] is recognized as a standard authority upon this question, and the principle there declared has been approved in *Graham* v. *Railroad Company,* 102 U. S. 148. The proposition of law decided in that case is thus stated: "Admitting Bellangee practiced fraud upon Casey which would have enabled the latter to set aside the deed, does the subsequent conveyance by Casey to Crocker enable him to avail himself of the same fraud?" And it was held that the second conveyance by the grantor gave the grantee no rights. The court declared the first transfer, even though procured by fraud, vested the title to the land in the grantee, and until that conveyance was set aside the grantor had no further title in him to convey. Again, the complaint in this case contains no allegation as to the *status* of the Dundon litigation upon February 20, 1899, the date of the filing of the pleading. Perchance at that time the whole proceeding had been stricken from the records of the court. If this or

---

[1] 28 Am. St. Rep. 106.        [2] 70 Am. Dec. 489.

like conditions existed, then the allegation of the complaint as to the commencement of the Dundon litigation had no greater legal effect than though Dundon, for the bank, or the bank itself, had simply served a notice upon McDonald that the sale was repudiated. Surely a mere notice to him of the repudiation of the sale would not have rendered a voidable sale void. This question is directly considered in the Wisconsin case cited, and it is there said: "But it is claimed by the complainant that if the deed from Casey to Bellangee was voidable at the option of Casey, the act of Casey in conveying the land to Crocker was the exercise of this option, and had the effect to avoid the deed to Bellangee and to convey the title to Crocker. We do not see how this effect can be given to the deed to Crocker. . . . But it seems to us that something more was necessary to be done in this case than to convey the land to another purchaser in order to avoid the first deed. It must be remembered that the *title* was conveyed to Bellangee, subject to be defeated by Casey, if the deed was obtained from him by fraud. Now, we cannot see how a conveyance to Crocker could have the effect to divest Bellangee of his title. The title being in him, some proceeding must be had to which Bellangee was a party, in order to divest him of the title he acquired by his deed." To this point it is said, in *Whitney* v. *Kelley,* 94 Cal. 146[1]: "Plaintiff's grantors had no power, by conveyance or otherwise, to nullify the effect of this judgment, except by a direct assault upon it in a court of equity. They had the right to make the assault, and that is all the right they possessed. They had neither the title, the possession, nor the right of possession; and, under such circumstances, their conveyance to plaintiff carried nothing but a mere naked right to bring an action to set aside a judgment for a fraud practiced upon them. A plaintiff with such a right has no equity, and is not entitled to recognition in a court of equity." In lieu of the judgment here referred to, we may substitute in this quotation the sale to McDonald; and then, invoking the principle of law declared, plaintiff is not entitled to the relief demanded.

In the case of *Traer* v. *Clews,* 115 U. S. 528, relied upon by the appellant, the court treated the prior transfer by Tappan

[1] 28 Am. St. Rep. 106.

as void, and not voidable, and that the subsequent transfer to
Clews was of substantial and tangible property.   In many
respects it is analogous to *Emmons* v. *Barton,* 109 Cal. 166.
In *Graham* v. *Railroad Co.,* 102 U. S. 148, the subject is
exhaustively treated in the opinion of Mr. Justice Bradley,
and the reasoning throughout supports the conclusion here
declared.   There the attack was made by subsequent creditors
and not subsequent purchasers, but the court said: "It seems
clear that subsequent creditors have no better right than sub-
sequent purchasers to question a previous transaction in which
the debtor's property was obtained from him by fraud which
he has acquiesced in and which he has manifested no desire to
disturb.   Under such a case subsequent purchasers have no
such right."   The learned justice then cites *French* v. *Shot-
well,* 5 Johns. Ch. 555, wherein it was said by Chan-
cellor Kent: "It is stated to have been a principle of the
common law that the fraud could only be avoided by him who
had a prior interest in the estate affected by the fraud, and not
by him who subsequent to the fraud acquired an interest in
the estate."

For the foregoing reasons the judgment and order refusing
an injunction are affirmed.

Harrison, J., and Van Dyke, J., concurred.

Hearing in Bank denied.