[Civ. No. 10798.   First Appellate District, Division Two.—March 27, 1939.]

A. R. MASON, Appellant, v. DRUG, INC. (a Corporation) et al., Respondents.

J. Maxwell Peyser and Penaat & Penaat for Appellant.

John Francis Neylan and Chickering & Gregory for Respondents.

STURTEVANT, J.—The trial court sustained the demurrers of two of the defendants without leave to amend. From the judgment entered the plaintiff has appealed.

Including fictitious parties, the plaintiff named a large number of defendants, several corporations, and many individuals. No person appeared as being one of the fictitious defendants excepting W. W. Hindman. All of the other individuals are directors of the corporate defendants. Except Owl Drug Preferred Stockholders Association, all of the corporations named are alleged to be the affiliates and agents of Drug, Inc., a corporation. The record is silent as to what persons, natural or artificial, have been served with process. Only two defendants, United Drug Company, a corporation, and W. W. Hindman appeared and demurred. The plaintiff complains because their demurrers were sustained. The demurrers were both general and special. Before taking up a consideration of the attacks made by said demurrers, the substance of the plaintiff's amended complaint should be stated. Among other things, it alleged the following facts:

Prior to February 9, 1932, Owl Drug Company was a corporation organized under the laws of the State of Nevada and had issued and there were outstanding 40,000 shares of common stock and 60,000 shares of preferred stock. Each share was of the par value of $100 but the preferred stock had no voting power. Prior to the transactions complained of the preferred stock was owned and held by many different stockholders. The common stock of the Owl Drug Company was owned by Drug, Inc. The latter and its affiliates were desirous of taking over the business and properties of the former. To protect their interests some of the preferred stockholders formed a corporation, Owl Drug Preferred Stockholders Association, and caused that action to be brought entitled *Hindman* v. *Owl Drug Co.*, 4 Cal. (2d) 451 [50 Pac. (2d) 438]. That decision was filed October 16, 1935. Feeling that all of their rights had not been adjusted, three hundred sixty or more preferred stockholders, one of whom was a member of said association, assigned their claims to this plaintiff, who claims to represent 9,384 shares of said preferred stock. The plaintiff does not allege that he is or ever was the owner of any of the preferred stock of the Owl Drug Company. He sues solely as assignee.

He alleges that the defendants fraudulently conspired to cause said assignors to exchange their preferred stock in the Owl Drug Company for stock of Drug, Inc., and pursuant to that plan Drug, Inc., purchased all of the common stock of the Owl Drug Company; that the latter had an established business in the middle west and on the Pacific coast which was reasonably worth $10,000,000; that the defendants represented (1) that the Owl Drug Company was indebted to United Drug Company (one of the affiliates of Drug, Inc., a corporation) in the sum of $2,000,000; (2) that the financial condition of Owl Drug Company was not as favorable as plaintiff's assignors had believed it to be; (3) that defendants represented to plaintiff's assignors that W. W. Hindman and Owl Drug Preferred Stockholders Association were acting in behalf of plaintiff's assignors; that plaintiff's assignors believed said representations, and acted thereon, and thereafter exchanged their stock on October 15, 1932, to their damage, etc.

Commingled with said charge of fraudulent misrepresentations there is a charge of fraudulent concealment. That charge includes the allegation that W. W. Hindman and Owl Drug Preferred Stockholders Association deliberately withheld from plaintiff's assignors and from holders of Owl Drug Company preferred stock any detailed information as to the assets or net worth of said company or the fact that a large part of its liabilities were owing to Drug, Inc., and it was further alleged that the same defendants withheld from plaintiff's assignors and from Owl Drug Company preferred stockholders the fact that W. W. Hindman was being paid $35,000 by defendants.

The amended complaint is wholly silent regarding any claim that any one of plaintiff's assignors rescinded or attempted to rescind the exchange of shares of stock. The pleading is solely a claim for damages as for fraud.

In support of the ruling of the trial court the defendants contend the plaintiff's cause of action is barred by the judgment in *Hindman* v. *Owl Drug Co., supra.* They call to our attention parts of the transcript which show: that in the original complaint the plaintiff set forth all of the allegations contained in the amended complaint and in addition he pleaded by reference the said judgment; that the defendants demurred thereto; that the trial court sustained said demur-

rers on the ground said judgment was *res judicata;* that the plaintiff struck out of said pleading all allegations regarding said judgment and then filed the deleted pleading as the amended complaint now before us. Thereafter the defendants, appearing, each presented (1) a motion to strike and (2) a demurrer. The trial court never ruled on the motions to strike. It sustained the demurrers without leave to amend.

■ The defendants argue that in doing so the trial court had the power to take, and that it did take into consideration the allegations contained in the original complaint pleading the Hindman judgment, and also those contained in the amended complaint. The court was of course bound to, and it did, examine the allegations set forth in the amended complaint to which the defendants had demurred. But it had the right at all times to take judicial notice of its own records in the case. (Code Civ. Proc., sec. 1875, subd. 3.) In some cases the courts have exercised the power of taking judicial notice and have held that facts alleged in the complaint demurred to were nonexistent. (*Ohm* v. *San Francisco,* 92 Cal. 437, 449 [28 Pac. 580]; *Mullan* v. *State,* 114 Cal. 578, 581 [46 Pac. 670, 34 L. R. A. 262]; *French* v. *Senate,* 146 Cal. 604, 607 [80 Pac. 1031, 2 Ann. Cas. 756, 69 L. R. A. 556].) In another case the trial court sustained a demurrer of a defendant to a supplemental complaint and ordered judgment in favor of the defendant, that is, it wholly failed to take judicial notice of its own records which showed the original complaint had been answered, that the issues so framed had not been determined, and nevertheless the court ignored such matters and ordered a final judgment. On appeal that judgment was reversed because the trial court did not take notice of its own records. (*Craiglow* v. *Williams,* 45 Cal. App. 514 [188 Pac. 76]; see, also, *People* v. *Clinton,* 78 Cal. App. 451 [248 Pac. 929]; *People* v. *Rhodes,* 137 Cal. App. 385 [30 Pac. (2d) 1026]; *Schomer* v. *R. L. Craig Co.,* 137 Cal. App. 620 [31 Pac. (2d) 396]; 15 R. C. L. 1113.)

If the trial court had granted the motion of United Drug Company to strike and had failed and refused to pass on its demurrer, a more simple question would have been presented. On the hearing of the motion the trial court would have been entitled to act on the evidence and that evidence, of course, would have included judicial notice of all the records in the action.

■ Not waiving his contention that the Hindman judgment was not *res judicata,* the plaintiff contends that the parties in the instant case were not adverse in the Hindman case. As to United Drug Company and its affiliates on the one hand, and the plaintiff's assignors on the other hand, it is clear said contention is not well founded. However, as to the defendant Hindman the point is sound. As to him the judgment in *Hindman* v. *Owl Drug Co., supra,* was not *res judicata.*

In the amended complaint it is alleged that Owl Drug Preferred Stockholders Association undertook to represent all of preferred stockholders in the action entitled *Hindman* v. *Owl Drug Co., supra,* and that Hindman was in charge of that litigation for said stockholders. ■ Then there is a hint that Hindman took secret compensation from his adversaries. If he did so of course it would have been serious fraud. But the pleading does not allege such fraud. It is stated ''that said W. W. Hindman and said Owl Drug Preferred Stockholders Association deliberately withheld from plaintiff's assignors and other Owl Drug Company preferred stockholders the fact that W. W. Hindman was being paid by said defendants named herein $35,000 cash in addition to the stock exchange offered all stockholders as compensation for obtaining the consent of the Owl Drug Company preferred stockholders to said stock exchange; . . . '' That is the sole allegation of duplicity. But, looking at other portions of the record it is clear said action was a representative action maintained by W. W. Hindman, that it was successful, and that the trial court awarded him $30,000, his costs including counsel fees. That award was clearly authorized by law. (14 C. J. 948; *Fox* v. *Hale & Norcross S. M. Co.,* 108 Cal. 475, 477 [41 Pac. 328].) In no proper sense was it a payment of secret profits.

■ The purported charge of concealment was wholly insufficient against the defendant W. W. Hindman. It is not alleged that any contract relations ever existed between Hindman and the plaintiff's assignors. No facts are alleged showing that the case falls within the provisions of section 1710 of the Civil Code. Hence it is controlled by the doctrine stated in *Camm & Hedges Co.* v. *Bank of Covelo,* 208 Cal. 246, 250 [280 Pac. 962], and said charges were insufficient as against W. W. Hindman.

■ As to the defendant United Drug Company, the charges of concealment and of false representations are both merely charges of intrinsic fraud in *Hindman* v. *Owl Drug Co., supra,* and are not subject to review in this proceeding. (*Pico* v. *Cohn,* 91 Cal. 129, 135 [25 Pac. 970, 27 Pac. 537, 25 Am. St. Rep. 159, 13 L. R. A. 336].)

■ The corporations could speak and act only through their agents and servants. Therefore it was material to state the names of such agents and servants, what they said and did material to the cause of action which the pleader was attempting to set forth, when the event happened, and such facts and circumstances as the pleader relied upon as proof of the fraud and deceit constituting his cause of action. (*Davis* v. *Rite-Lite Sales Co.,* 8 Cal. (2d) 675, 682 [67 Pac. 1039].) At an early date Mr. Justice Field, in *Green* v. *Palmer,* 15 Cal. 411, at page 415 [76 Am. Dec. 492], quoted with approval, ''Those facts, and only those, must be stated which constitute the cause of action, the defense, or the reply. Therefore, first, each party must allege every fact which he is required to prove, and will be precluded from proving any fact not alleged.'' Fraud is never presumed. So in the instant case, if the plaintiff would charge the defendant corporation with making fraudulent misrepresentations it was necessary for him to allege the name of the person who spoke, his authority to speak, to whom he spoke, what he said or wrote, and when it was said or written. But the amended complaint is wholly wanting in such allegations. Therefore it did not state facts sufficient to charge the corporate defendants. ■ The plaintiff alleged that the defendant Hindman issued certain ''communications''. Conceding that expression was more nearly correct, it was not sufficient in the face of the special demurrer which attacked the allegation from several different angles. Among others, the said demurrers alleged it could not be ascertained whether said communications were written or oral, whether they were received by plaintiff or plaintiff's assignors, what form of communication and what communications were made to each of plaintiff's assignors and whether or not W. W. Hindman and the Owl Drug Preferred Stockholders Association had any information as to the assets or net worth of Owl Drug Company or of its liabilities.

■ If it be conceded that the amended complaint would have stated a cause of action either for false representations or for concealment if it had been filed by one of plaintiff's assignors, it is patent that the pleading is insufficient when considered as one filed by an assignee. As stated above, this plaintiff does not claim to be a stockholder in his own right nor as assignee. The extent of his claim is stated in his pleading as follows: ''That prior to the commencement of this action each of the assignors of plaintiff . . . sold, transferred and assigned to plaintiff all of their right, claim, and demand of said assignor herein sued upon.'' The property assigned by his assignments was the amount of the ''right, claim and demand of said assignor herein sued upon'', the damages of his assignors—no more, no less. But such a claim is not assignable, except when assigned in connection with the property that was obtained by fraud and deceit. (*Wikstrom* v. *Yolo Fliers Club*, 206 Cal. 461, 463 [274 Pac. 959]; *Sanborn* v. *Doe*, 92 Cal. 152 [28 Pac. 105, 27 Am. St. Rep. 101]; *Archer* v. *Freeman*, 124 Cal. 528 [57 Pac. 474]; *Smith* v. *Pacific Bank*, 137 Cal. 363 [70 Pac. 184]; *Greenlee* v. *Los Angeles Trust etc. Bank*, 171 Cal. 371 [153 Pac. 383]; *Emmons* v. *Barton*, 109 Cal. 662, 666 [42 Pac. 303].) It follows that the amended complaint did not state a cause of action in favor of the plaintiff.

The trial court did not err in sustaining the demurrers of the defendants. The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 25, 1939.