[Civ. No. 63114. Second Dist., Div. Five. June 25, 1982.]

JOSE ALONSO PARRA OSUNA, Plaintiff and Appellant, v. JASON J. ALBERTSON et al., Defendants and Respondents.

COUNSEL

Rezac, Stroud & Suhr and Randy L. Kuckuck for Plaintiff and Appellant.

Ernest Duncan for Defendants and Respondents.

OPINION

**LAVINE, J.**[*]—This action, based on promissory notes secured by deeds of trust, was brought by the trustee of an inter vivos trust against the trustors of the deeds of trust upon theories of waste, fraud and deceit, and negligent representation for permitting real property to be sold to the State of California for failure to pay real property taxes. Demurrers were sustained without leave to amend, an order of dismissal was filed, and appeal was taken from the dismissal.

## FACTS

In 1971 Andrew and Evelyn Zyara sold contiguous parcels of real property to respondents and took back promissory notes secured by purchase money deeds of trust. Andrew Zyara died in 1977 and Evelyn Zyara became the sole owner of the properties. On August 22, 1980, Evelyn assigned to appellant all of her rights in the promissory notes and deeds of trust. Shortly thereafter on September 30, 1980, but prior to commencement of the action, Evelyn also assigned to appellant all of her right, title and interest in the 21st cause of action for fraud and deceit, and the 22d cause of action for negligent misrepresentation.

The first 10 *odd-numbered* causes of action were based upon the promissory notes. Demurrers to these were sustained because of the anti-deficiency legislation; appellant acquiesced in that ruling and no appeal is taken therefrom. The first 10 *even-numbered* causes of action are based upon the theory of waste (one for each parcel) because of appellants' failure to pay real property taxes, resulting in tax sales. These sales destroyed appellant's security interest in the property.

---

[*]Assigned by the Chairperson of the Judicial Council.

The representations complained of in the 21st cause of action for fraud and deceit and the 22d cause of action for negligent misrepresentation, were allegedly made in 1977. The representations were that respondents owned the real property, that in consideration of Evelyn refraining from proceeding with any collection action on the notes they would give her certain grant deeds in an attempt to convey the property to her, and they would execute any other documents that were required. It was alleged that the representations were false in that the property had been sold to the State of California for delinquent property taxes (Rev. & Tax. Code, § 3436 et seq.) and was about to be sold at public auction pursuant to section 3691 et seq.; that respondents did not convey the property to Evelyn; and did not intend to execute the documents required to complete a transfer.

The reasons set forth by the trial court for sustaining demurrers to the first 10 even-numbered causes of action for waste are: "... Other cases ... recognize that the section (Code Civ. Proc. § 580b) bars a purchase money trust deed holder from recovering where the security becomes valueless. Nor is the situation helped by the argument that the even numbered causes of action, predicted [*sic*] on a theory of waste, may not be barred as a matter of law and that the question is one of fact under the reasoning of *Cornelison v. Kornbluth*, 1975, 15 C.3d 590. The dereliction charged here, failure to pay taxes as agreed, is not 'waste' within the legal meaning of that term, *Krone v. Goff*, 1975, 53 C.A.3d 191, 195. It is unnecessary to consider other grounds of demurrer to these causes of action...."

With regard to the 21st and 22d causes of action the trial court gave as reasons: "In opposing the statute of frauds arguments made by defendants, Plaintiff argues that he is not seeking to enforce a transfer of property, but rather to assert a cause of action based upon fraud (or negligent misrepresentation) perpetrated by one of the defendants, acting for all of them, upon plaintiff's assignors. Thus, it appears that the mere naked action for fraud is what is said to have been assigned (and outside the record we are told that the assignor is now dead.)[1] This leads to the conclusion that the general demurrers ought to be sus-

---

[1]Since the action is brought by the trustee it is not necessary to consider the effect of Code of Civil Procedure section 385, subdivision (a), which provides for the procedure upon the death of a party, as Evelyn is not a party to this action. Section 385, subdivision (a), if applicable, would require a motion for substitution to be made, but compare Federal Rules of Civil Procedure, rule 25(a), which provides for a suggestion of death of a party upon the record.

tained, and the Court so orders, not on the grounds argued but because the causes of action are not assignable. See cases cited in paragraph 12 of annotations to Civil Code section 954, West's Annotated Codes...."

Upon a motion for reconsideration, the trial court held that the demurrers to the 21st and 22d causes of action were sustained without leave to amend, stating: "The court is well aware that fraud based causes of action involving injury to real or personal property are among those causes of action which are assignable. However, in their prior points and authorities opposing the demurrers plaintiffs stated that these two causes of action 'are not an attempt to evade the Statute of Frauds, but rather are based upon the fraudulent inducement of plaintiff to refrain from taking collection action ...' ... The court advisedly referred to these two causes of action as being upon 'naked' fraud (or negligent misrepresentation) and remains of the view that they are not assignable...."

## ISSUES

1. Does failure to pay real property taxes by the trustor of a deed of trust constitute waste within the meaning of Civil Code section 2929? Yes.

2. Does antideficiency legislation bar an action for waste as pleaded in the complaint (where appellant did not allege that failure to pay taxes was in bad faith)? Yes.

3. Are the causes of action for fraud and negligent misrepresentation, as pleaded herein, assignable? Yes.

## DISCUSSION

1. Does failure to pay real property taxes by the trustor of a deed of trust constitute waste within the meaning of Civil Code section 2929? Yes, except the antideficiency legislation, *supra*, may take away the remedy.

Civil Code section 2929, unchanged since the Field Code of 1872, states: "Waste. No person whose interest is subject to the lien of a mortgage may do any act which will substantially impair the mortgagee's security." Seemingly such language is broad enough to impose

liability upon a mortgagor who impairs the security of a mortgagee by failure to pay property taxes. However, although a broad definition is given to the word "waste" by section 2929, the authorities in California and elsewhere are not in accord as to whether an action for waste (other than bad faith waste discussed *infra*) will lie for a mortgagor's failure to pay property taxes.

In *Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590 [125 Cal.Rptr. 557, 542 P.2d 981], an action for damages for waste was brought by the beneficiary of a deed of trust against the trustors and their successors in interest. Appellant alleged that respondent Kornbluth breached covenants in the deed of trust and promissory note by selling to the Larkins, and had committed waste by (a) failure to pay property taxes, (b) failure to make payments on the note, and (c) failure to properly care for and maintain the premises. Summary judgment was granted to respondent Kornbluth and sustained on appeal.

Declarations in *Cornelison* supporting the motion for summary judgment showed that respondent had never assumed the promissory note, that the county health authorities had condemned the house as unfit for human habitation, that after the note was in default appellant caused the property to be sold at a trustee's sale, and that he purchased the property at the sale for an amount equal to the balance due on the note plus costs. Respondent contended that since appellant purchased the property for a full credit bid, an action for waste was precluded both by reason of antideficiency legislation and because appellant's security interest was extinguished by a full credit bid at the trustee's sale. Appellant contended that an action for waste may be maintained independently of the antideficiency legislation.

The court stated in *Cornelison* v. *Kornbluth, supra*, 15 Cal.3d at page 597: "In order to resolve this issue it is necessary to first define, and trace the history of an action for waste and secondly to analyze the impact of the antideficiency legislation induced by the depression of the 1930's upon this traditional action." The court then traced on pages 597-598 the history of the action for waste, and stated at page 599: "Although a nonassuming grantee of mortgaged property is not personally liable on the debt, his interest in the property is subject to the lien . . . and therefore he is under a duty not to impair the mortgagee's security. Defendant as a nonassuming grantee of the property subject to plaintiff's deed of trust was under a duty not to commit waste."

The court then considered the effect of the antideficiency legislation (Code Civ. Proc., §§ 580b and 580d) on appellant's action for waste, holding at page 604:

"Accordingly, we hold that section 580b should apply to bar recovery in actions for waste following foreclosure sale in the first instance but should not so apply in the second instance of 'bad faith' waste.[2] We further hold that it is within the province of the trier of fact to determine on a case by case basis to what, if any, extent the impairment of the mortgagee's security had been caused (as in the first instance) by the general decline of real property values and to what, if any, extent (as in the second instance) by the bad faith acts of the mortgagor, such determination, in either instance, being subject to review under the established rule of appellate review."

The court finally held on page 606 that the action for waste could not proceed against respondent:

"While our foregoing conclusion may expose defendant to liability on the basis of having committed 'bad faith' waste, the question need not be resolved. We have further concluded that even assuming that defendant is liable on such basis, nevertheless plaintiff cannot recover since she purchased the subject property at the trustee's sale by making a full credit bid." Although *Cornelison* does not state in so many words, we believe a fair reading of the holding in the case, in relation to the facts alleged, supports the conclusion that an action for waste will lie for failure of a mortgagor or trustor of a deed of trust to pay property taxes (unless barred by the antideficiency legislation).

*Krone* v. *Goff* (1975) 53 Cal.App.3d 191 [127 Cal.Rptr. 390], decided 13 days prior to *Cornelison*, reasoned differently on this issue, but reached the same result by upholding a summary judgment to prevent appellants from collecting damages apart from a deficiency judgment. The complaint alleged that the trust deed required the respondent purchaser to make structural repairs to the buildings damaged by the 1971 earthquake, to repair fire damage and to pay taxes, which respondent had failed to do. The court stated at pages 194-195: "The earthquake was obviously an act of God. Appellants make no suggestion that Goff

---

[2]In the case at bar appellant has not elected to allege that failure to pay the property taxes was omitted by respondents in bad faith, so we need not consider this exception to the bar of antideficiency legislation upon an action for waste.

was responsible for the fire, nor is there any charge that Goff's failure to pay taxes after 1971 was anything other than a breach of a covenant in the trust deed.

"The law does recognize that the holder of a mortgage or the beneficiary of a trust deed may be sued independently of section 726 Code of Civil Procedure for a distinguishable wrong such as injury of the security by third parties or assert rights in eminent domain proceedings if the security of the encumbrance has been affected [fn. omitted] or for waste, Civil Code section 2929, but as previously stated, we know of no case which holds that any of Goff's omission constituted waste. [Fn. omitted.]

"*.* * * * * * * * * * * *

"... None of the cases even suggest that the traditional and legal meaning of waste, as that word is used in a mortgage or trust deed, embrace the failure to pay taxes."

Other authorities in California and elsewhere are in conflict, some holding that failure to pay taxes constitutes waste,[3] and others holding that failure to pay taxes does not constitute waste.[4] Most of the definitions or discussions of waste are of little help in resolving the precise question.[5] Courts of equity were inclined in the past, as today, to grant injunctions to prevent "permissive waste" which might endanger the reversionary interest.[6]

---

[3]*Nielsen* v. *Heald* (1922) 151 Minn. 181 [186 N.W. 299, 300, 26 A.L.R. 29];*Abernethy* v. *Orton* (1903) 42 Ore. 437 [71 P. 327, 329]; also see dissent in *American Savings & Loan Assn.* v. *Leeds* (1968) 68 Cal.2d 611 at pages 617-618 [68 Cal.Rptr. 453, 440 P.2d 933], although not involving payment of taxes.

[4]*Camden Trust Co* v. *Handle* (1942) 132 N.J.Eq. 97 [26 A.2d 865, 154 A.L.R. 602]; see *American Savings & Loan Assn.* v. *Leeds, supra*, 68 Cal.2d 611, 616 (not involving payment of taxes); see Restatement Second of Property (§ 12.2, com. a); see 2 Blackstone's Commentaries 201.

[5]*Hickman* v. *Mulder* (1976) 58 Cal.App.3d 900 [130 Cal.Rptr. 304]; *Schumacher* v. *Gaines* (1971) 18 Cal.App.3d 994 [96 Cal.Rptr. 223]; *So. Pac. Land Co.* v. *Kiggins* (1930) 110 Cal.App. 56, 60-61 [293 P. 708]; *McCord* v. *Oakland Q. M. Co* (1883) 64 Cal. 134, 140-141 [27 P. 863]; *Robinson* v. *Russell* (1864) 24 Cal. 467; *California Land Security & Development* (Cont.Ed.Bar 1960) paragraph 3.29; 61 Cal.Jur.3d, section 4, page 595; Civil Code sections 818, 821, 826; Code of Civil Procedure sections 732, 745; Probate Code sections 521, 550, 573, 707; Coke upon Littleton, 45a-52b; Magna Carta, cap. IV (25 Edw. I).

[6]7 Holdsworth, A History of English Law, pages 276-280.

■ 2. Does antideficiency legislation bar an action for waste as pleaded in the complaint (where appellant did not allege that the failure to pay taxes was in bad faith)? Yes, in the absence of bad faith. No, when bad faith is alleged and proved.

In *Brown v. Jensen* (1953) 41 Cal.2d 193 [259 P.2d 425] plaintiff sold real property to defendants. As part of the purchase price, defendants executed a note secured by a first deed of trust to a savings and loan association, and a second note secured by a second deed of trust to plaintiff. Hence both instruments were purchase money trust deeds. The first deed of trust was foreclosed in some way, and suit was brought on the promissory note secured by the second deed of trust. Plaintiff had not bid in at the foreclosure sale on the first trust deed. Plaintiff's complaint alleged that her security (second deed of trust) was worthless in order to meet the requisite that but one action, namely for foreclosure, could be brought. (Code Civ. Proc., § 726.) Judgment for plaintiff was reversed on appeal, the court stating at pages 197-198:

"Under section 726, as above stated, it is held that whether there is a security is determined as of the time the action is commenced and if the security is lost or has become valueless, an action on the note will lie because the events which caused it to become valueless were beyond the control of the trustor and were not contemplated at the time the money was loaned and the trust deed given. With purchase money trust deeds, however, the character of the transaction must necessarily be determined at the time the trust deed is executed. Its nature is then fixed for all time and as so fixed no deficiency judgment may be obtained regardless of whether the security later becomes valueless.

"The question is, therefore, did plaintiff take a purchase money trust deed on the property when it was purchased? If she did, then section 580b is applicable and she may look only to the security. That is the clear import of the wording of section 580b. The one taking such a trust deed knows the value of his security and assumes the risk that it may become inadequate. Especially does he know the risk where he takes, as was done here, a second trust deed. It is true that the section speaks of a deficiency judgment after sale of the security but that means after an actual sale or a situation where a sale would be an idle act, where, as here, the security has been exhausted. The deficiency judgment which cannot be obtained is still a deficiency judgment even though it may consist of the whole debt because a deficiency is nothing more than the difference between the security and the debt .... "

Returning to *Cornelison* v. *Kornbluth, supra,* 15 Cal.3d, it states at page 603: "Mindful of the foregoing, we now proceed to arrive at an assessment of the effect of sections 580b and 580d upon an action for waste. First, we examine the 580b proscription of a deficiency judgment after any foreclosure sale, private or judicial, of property securing a purchase money mortgage.... It is clear that allowing an action for waste following a foreclosure sale of property securing purchase money mortgages may often frustrate this purpose."

*Cornelison* then held at page 604: "Accordingly, we hold that section 580b should apply to bar recovery in actions for waste following foreclosure sale in the first instance ...."

In the case at bar the Zyaras knew at the time the property was sold to respondents that property taxes always were a potential prior lien upon the property for succeeding years, and should have anticipated the risk that if property taxes for any year were not paid by the possessors of the property there might be a sale to the State of California. This risk is analogous to that in *Bargioni* v. *Hill* (1963) 59 Cal.2d 121 [28 Cal.Rptr. 321, 378 P.2d 593], where a senior trust deed existed at the time of purchase.

Upon the authority of the cases cited, we hold that the holder of a purchase money deed of trust is barred from bringing an action for waste for failure of the possessor to pay the property taxes (in the absence of an allegation of bad faith waste as described in *Cornelison, supra,* 15 Cal.3d 590). Therefore the demurrers to the first 10 even-numbered causes of action were properly sustained, in the present state of the pleadings.

■ 3. Are the causes of action for fraud and negligent misrepresentation, as pleaded herein, assignable? Yes.

Civil Code section 954 has provided since its enactment in 1872: "Transfer and survivorship. A thing in action, *arising out of the violation of a right of property, or out of an obligation,* may be *transferred* by the owner. Upon the death of the owner it passes to his personal representatives, except where, in the cases provided in the Code of Civil Procedure, it passes to his devisees or successor in office."[7] (Italics added.)

---

[7]The last sentence of Code of Civil Procedure section 954 must be read in conjunction with Probate Code section 573, discussed *infra.*

Are the causes of action as pleaded here those arising out of the violation of a right of property and/or out of an obligation? Evelyn Zyara possessed a right of property, namely her promissory notes secured by deeds of trust, together with a right of action for waste, should her rights be violated. She also possessed an obligation, namely the promises contained in the deeds of trust and promissory notes, including the promise to pay property taxes. She transferred those property rights to appellant as her trustee under an inter vivos trust on August 22, 1980, and several weeks later transferred to the same trustee her causes of action. Were it not for the antideficiency legislation, Evelyn (or her trustee) could have brought actions upon the promissory notes and for waste under the first 20 causes of action, although action on these causes of action is presently barred. (Code Civ. Proc., §§ 580b and 580d.)

*American T. Co.* v. *California etc. Ins. Co.* (1940) 15 Cal.2d 42 [98 P.2d 497] stated at page 67: "It is, of course, well settled in California that the right to recover money or property obtained by fraud may be thus assigned." The trial court in the case at bar held that since it appeared that it was a mere naked action for fraud that was assigned, it was not transferable under Civil Code section 954. We do not agree. While the pleadings are no model of a claim for damages for fraud or negligent misrepresentation, the allegations, as liberally construed, appear to satisfy Civil Code section 954. (See *Brousseau* v. *Jarrett* (1977) 73 Cal.App.3d 864, 870-871 [141 Cal.Rptr. 200].)

California cases have refused to permit assignment of a cause of action for fraud under some circumstances. *Mason* v. *Drug, Inc.* (1939) 31 Cal.App.2d 697 [88 P.2d 929], *Greenlee* v. *Los Angeles Trust & Sav. Bank* (1915) 171 Cal. 371 [153 P. 383], *Smith* v. *Pacific Bank* (1902) 137 Cal. 363 [70 P. 184], *Archer* v. *Freeman* (1899) 124 Cal. 528 [57 P. 474] and *Sanborn* v. *Doe* (1891) 92 Cal. 152 [28 P. 105], stand for the proposition that where no underlying property right is transferred with the fraud cause of action, the latter is not assignable.

In *Wikstrom* v. *Yolo Fliers Club* (1929) 206 Cal. 461 [274 P. 959], the question before the court was whether the action for fraud had abated by reason of the death of the appellant. The court refused the motion to abate, characterizing the amended complaint on page 467 as follows: "But the state of facts set forth in the plaintiffs' amended complaint and above recited does not present a case where the plaintiffs are seeking to recover upon assigned claims for damages for naked fraud

and deceit involving no substantial right of property in plaintiffs' assignors. On the contrary, the facts, in our opinion, clearly show that the defendants, by means of their alleged fraudulent and deceitful acts and conduct, were enabled to come into possession of an amount of money . . . ." The court announced the present California law to be on page 464:

"'Assignability of things in action is now the rule; nonassignability, the exception; and this exception is confined to wrongs done to the person, the reputation, or the feelings of the injured party, and to contracts of a purely personal nature, like promises of marriage.' We have no doubt that under the above general doctrine alone, the cause of action in question must be held assignable and to have survived. (*Lazard* v. *Wheeler*, 22 Cal. 139.)

"But, supplementing said general doctrine, it must be said that sections 953 and 954 of the Civil Code have lifted many of the restrictions imposed by the rule of the common law upon this subject. There can be little doubt that the cause of action set forth in the complaint here is a 'thing in action' under said section 953, and arises 'out of the violation of a right of property,' under said section 954, and is expressly made assignable and declared to survive the death of the owner by the latter statute."

*Wikstrom* v. *Yolo Fliers Club, supra,* 206 Cal. 461, was approved and reiterated in *Jackson* v. *Deauville Holding Co.* (1933) 219 Cal. 498 [27 P.2d 643], in which the court upheld a money judgment founded upon a cause of action for fraud and deceit. (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 738, p. 619.) The distinction between assignable and nonassignable causes of action for fraud and deceit is well illustrated in *Goodley* v. *Wank & Wank, Inc.* (1976) 62 Cal.App.3d 389 [133 Cal.Rptr. 83], in which plaintiff alleged he was the owner of a claim for legal malpractice against defendants arising out of erroneous advice given to a wife in dissolution of marriage proceedings. The court affirmed on appeal the summary judgment granted below, stating at page 395:

"Our view that a chose in action for legal malpractice is not assignable is predicated on the uniquely personal nature of legal services and the contract out of which a highly personal and confidential attorney-client relationship arises, and public policy considerations based thereon."

In contrast a right to contest a will was held to be assignable (and thus survived the death of the original contestant of the will under the former statute equating survivability of causes of action with the test of assignability) in *Estate of Baker* (1915) 170 Cal. 578 [150 P. 989]. In that case the court stated at page 587: "... It suffices to point out that the tendency of modern jurisprudence strongly favors the *assignability* and the survivability of things in action. As expounded by Professor Pomeroy in 'Remedies and Remedial Rights,' sections 147-152: 'It is simply necessary to ascertain, and the sole principal difficulty consists in ascertaining, what particular torts are injuries, bodily or mental, to the person only, or to the reputation, and what particular contracts are purely personal, so that the right to enforce them, or the liability springing from them, does not survive after the death of the contracting party.'" (Italics added.)

The trend of the California law to expand the concept of survivability of causes of actions appears in *Hunt* v. *Authier* (1946) 28 Cal.2d 288 [169 P.2d 913, 171 A.L.R. 1379] in which the majority of the Supreme Court held that an action for waste and destruction of property rights would survive the wrongful death of a murdered man. The action was not brought under the wrongful death statute since the wrongdoer was dead at the time the action was commenced. The three dissenting members of the Supreme Court based their dissent on the basis that although they favored survivability of practically all tort actions, this change should be accomplished by the California Legislature. The Legislature in 1961 made almost all causes of action survivable, and Probate Code section 573 now reads in part: "Except as provided in this section no cause of action shall be lost by reason of the death of any person but may be maintained by or against his executor or administrator.

".    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Nothing in this section shall be construed as making assignable things in action which are of such a nature as not to have been assignable prior to the enactment of the 1961 amendment to this section."

The trial court noted that the assignor Evelyn Zyara had died. The sequence of events is that on August 22, 1980, Evelyn Zyara assigned to her trustee appellant, under an inter vivos trust, all of her right, title and interest in the promissory notes and deeds of trust. On September 30 she assigned all of her right, title and interest in the causes of action

for fraud and negligent misrepresentation. On October 23 this action was filed, and on November 5 Evelyn Zyara died at the age of 88.

If Evelyn had not made the assignments on August 22 and September 30, 1980, her personal representative, whether executor or administrator, could have filed the instant action for all 22 causes of action including the 21st and 22d based on fraud and negligent misrepresentation respectively (although the first 20 are presently barred by the antideficiency legislation). Probate Code section 573 clearly gives the personal representative such right to sue as to these survivable causes of action. Should it make any difference that appellant is now suing in the capacity of trustee of an inter vivos trust rather than as Evelyn's executor or administrator? We believe it should not make a difference under the facts pleaded here. Would it cure the defect of assignability if appellant were to seek letters of administration and then reassign the 21st and 22d causes of action back to himself as administrator of the estate of Evelyn Zyara? We believe that such a procedure is unnecessary.

For these reasons the 21st and 22d causes of action, as pleaded here, are assignable and the demurrers thereto should be overruled.

The judgment is affirmed in part and reversed in part, and is remanded to the trial court to permit appellant to plead causes of action consistent with the law as outlined above. Each party to bear its own costs of appeal.

Ashby, Acting P. J., and Hastings, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 18, 1982.