[Civ. No. 28683. Second Dist., Div. One. May 11, 1965.]

HOWARD P. GAUTIER et al., Plaintiffs and Appellants, v. GENERAL TELEPHONE COMPANY, Defendant and Respondent.

Fredric Bettin for Plaintiffs and Appellants.

Crider, Tilson & Ruppé and Abe Mutchnik for Defendant and Respondent.

LILLIE, J.—This is an appeal from a judgment of dismissal after the court had sustained without leave to amend defendant's demurrer to plaintiffs' fourth amended complaint.

■ The pleading attempts to state eight causes of action against defendant company. Count I, purportedly for breach of contract, alleges in part that from August 5, 1961, "to date," certain persons called plaintiffs by telephone and were advised by the defendant that plaintiffs' telephone was disconnected; that plaintiffs were subscribers of defendant telephone company, and that they demanded service and had paid all charges for their services and tolls; that although the urgency of such calls was explained to the operator the same reply was forthcoming, and such calls were not allowed to be transferred to the plaintiffs. It is then alleged that "said contract was entered into in Los Angeles County, California, but the date and whether the contract is written or oral is unknown to each plaintiff, but known to defendant, but for the purposes of this pleading will be claimed to be oral." It is further alleged that said acts or omissions proximately caused harm or emotional distress, inconvenience, and humiliation to each plaintiff, and exposed each plaintiff to public contempt and ridicule, to their damage in the sum there and then set forth.

For more than one reason the demurrer was well taken. ■ To state a cause of action for breach of contract, it is required that there be a pleading of the contract, plaintiffs' performance (or excuse for nonperformance), defendant's breach, and damage to plaintiff therefrom. (*Banducci* v. *Sresovich,* 52 Cal.App. 637 [199 P. 72].) The allegations contained in Count I do not set out the actual terms of the contract, either in *haec verba* or in legal effect. ■ If, as plaintiffs allege, they are ignorant as to whether the contract is written or oral, the law nonetheless requires that there be an allegation of such verbal agreement by setting forth the substance of its relative terms. Since plaintiffs have failed to comply with any of these requirements, the pleading understandably neglects also to state facts which assertedly constitute the defendant's breach. Thus, no facts are pleaded which set forth in what respect defendant's asserted statement to certain persons that plaintiffs' telephone was disconnected constituted a breach of the contract in suit. ■ Too, not only must the facts constituting the defendant's breach be stated with certainty, but there must also be an allegation that the damage to plaintiffs resulting therefrom is legally actionable. ■ The present pleading states that defendant's omissions or acts proximately caused emotional distress, inconvenience, and humiliation to the plaintiffs, and exposed them to public

contempt and ridicule; but in a breach of contract action the plaintiff is not entitled to damages for injury to his (or her) name, character or personal reputation. (*Walpole* v. *Prefab Mfg. Co.*, 103 Cal.App.2d 472, 489 [230 P.2d 36].) The case just cited makes reference to *Westwater* v. *Grace Church*, 140 Cal. 339 [73 P. 1055], where it was held that in an action for breach of contract a plaintiff cannot recover damages for injury to her reputation. The *Westwater* case, in turn, points out that under sections 3300 and 3301 of the Civil Code the measure of damages for the breach of an obligation arising from contract is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which in the ordinary course of things would be likely to result therefrom. Since these statutes further provide that no damages not clearly ascertainable both in their nature and origin can be recovered in a breach of contract action, the Supreme Court held that injury to the plaintiff's health, feelings or reputation, could not be proximately caused by wrongful discharge, "nor would it be likely to result in the ordinary course of things." (P. 342.)

▪ Count II is for the asserted "breach of implied warranties." In this connection, it is alleged that each plaintiff purchased and said defendant sold telephone services for the purpose and with the understanding that said services would be satisfactory for the normal and customary use thereof; that said services were not fit and suitable for ordinary use; that said conduct or omissions of said defendant interfered with plaintiffs' use and quiet enjoyment of said property and services; that as a proximate result of said conduct or omissions, plaintiffs have suffered harm or emotional distress, inconvenience and humiliation. The ruling on the demurrer as to this count was likewise correct. ▪ It is now settled in California that an action for breach of implied warranty will not lie where there has not been a sale of chattels but only the furnishing of services. In *Gagne* v. *Bertran*, 43 Cal.2d 481, 487 [275 P.2d 15], the court stated: "[The defendant] was not a seller of property who obligated himself as part of his bargain to convey property in the condition represented. . . . Thus the general rule is applicable that those who sell their services for the guidance of others in their economic, financial, and personal affairs are not liable in the absence of negligence or intentional misconduct."

▪ In Count III it is alleged that defendant "negligently" failed to transmit certain telephone calls to plaintiffs.

One related to unexpected surgery on the brother of plaintiff Howard Gautier in Missouri—as a result the latter was unable to be with his brother at the time planned; a second concerned the same brother's death in Florida, and plaintiffs could not attend the funeral "had they so desired"; other phone calls mentioned in this count were of a business nature and originated in Massachusetts. Although one of the essentials of actionable negligence is injury resulting from the breach of defendant's duty, and this must be pleaded (*Palmer* v. *Crafts,* 16 Cal.App.2d 370, 375 [60 P.2d 533]), no damages (other than emotional distress) are set forth with respect to any of the above assertedly negligent acts. The pleading is fatally defective for that reason. ▮ In California there can be no recovery for emotional distress unaccompanied by physical harm arising from acts solely negligent in nature. (*Espinosa* v. *Beverly Hospital,* 114 Cal.App.2d 232 [249 P.2d 843].) Nothing is alleged in the complaint as amended about consequent physical suffering, the charging paragraph as to damages reciting in part that "said conduct or omissions herein mentioned have proximately caused him [*sic*] harm or great emotional distress, inconvenience and humiliation to each plaintiff, and has exposed each plaintiff to public contempt and ridicule . . . ." *Sloane* v. *Southern Cal. Ry. Co.,* 111 Cal. 668 [44 P. 320, 32 L.R.A. 193], is relied on by plaintiffs, which case is referred to in *Amaya* v. *Home Ice, Fuel & Supply Co.,* 59 Cal.2d 295, 299 [29 Cal.Rptr. 33, 379 P.2d 513], as dealing "with the analytically different question of whether 'nervous disturbance' caused by fright or shock 'was a suffering of the body or of the mind' . . . ." There is language, particularly in the dissent (p. 325, fn. 5), which appears to be at variance with the result reached in *Espinosa*; but neither *Amaya* nor *Acadia, California, Ltd.* v. *Herbert,* 54 Cal.2d 328 [5 Cal.Rptr. 686, 353 P.2d 294], makes mention of *Espinosa,* nor has it ever been disapproved. A hearing by the Supreme Court in *Espinosa* having been denied, "Its judgment stands, therefore, as a decision of a court of last resort in this state, until and unless disapproved by this court . . . ." (*Cole* v. *Rush,* 45 Cal.2d 345, 351 [289 P.2d 450, 54 A.L.R.2d 1137].)

▮ Count IV is captioned "Emotional Distress," which is not in itself a tort but a form of injury resulting from tortious conduct. The charging paragraphs of Counts I and III are incorporated by reference. Having determined that the allegations in those counts do not state a cause of action,

we must likewise conclude that the ruling below as to this count was also correct.

In Count V it is alleged that defendant's acts and omissions were violative of section 7904, Public Utilities Code, and therefore constituted a nuisance. The statute, partially set forth in *haec verba* by plaintiffs, provides that "Every agent, operator, or employee of any telegraph or telephone office, who *wilfully* refuses or neglects to send any message received at such office for transmission, or *wilfully* postpones the transmission of the message out of its order, or *wilfully* refuses or neglects to deliver any message by telegraph or telephone, is guilty of a misdemeanor. . . ." (Italics added.) No facts are pleaded by plaintiffs which show a commission of the above proscription. The critical word in the section, emphasized by us accordingly, is "wilfully" which as used in criminal statutes "implies a purpose or willingness to commit the act (Pen. Code, § 7, subd. 1), and although it does not require evil intent, it implies that the person knows what he is doing, intends to do what he is doing and is a free agent." (*In re Trombley,* 31 Cal.2d 801, 807 [193 P.2d 734].) Count V is barren of any allegation that defendant intended to do what it assertedly did; on the contrary, the count is grounded solely on defendant's claimed negligence in the premises.

Count VI is on the theory of alleged fraud and deceit. This alleged cause of action is based on allegations to the effect that defendant through its agents and employees told plaintiffs that the interruption of service had been corrected when the same was not true, and that each plaintiff believed such representations to be true and justifiably relied upon them by taking no further action with respect thereto. The identity of the agent or employee is not disclosed; nor is there any allegation concerning the time and place of the asserted misrepresentation. Fraud is never presumed. "So in the instant case, if the plaintiff would charge the defendant corporation with making fraudulent misrepresentations it was necessary for him to allege the name of the person who spoke, his authority to speak, to whom he spoke, what he said or wrote, and when it was said or written. But the amended complaint is wholly wanting in such allegations. Therefore it did not state facts sufficient to charge the corporate defendants." (*Mason* v. *Drug, Inc.,* 31 Cal.App.2d 697, 703 [88 P.2d 929].) In general accord is *Allen* v. *Ramsay,* 179 Cal.App.2d 843, 848 [4 Cal.Rptr. 575]. For the above reason, as well as others, the demurrer was well taken.

Count VII charges an invasion of plaintiffs' right of privacy. The above right was invaded, according to the pleading, when defendant told certain unidentified persons that plaintiffs' phone was disconnected and such persons reasonably believed that plaintiffs had not paid their telephone bill. We need only refer to the landmark case in California, *Melvin* v. *Reid,* 112 Cal.App. 285 [297 P. 97], for our conclusion that the above facts (if true) did not constitute a commission of the tort. In *Melvin* v. *Reid,* it is declared that "The right of privacy can only be violated by printings, writings, pictures or other permanent publications or reproductions, and not *by word of mouth.*" (Italics added; p. 290.)

The eighth and final count is for "defamation." Plaintiff Howard Gautier alone is said to have been damaged as a result of the assertedly slanderous communications. Incorporating by reference certain allegations in three of the previous counts, the count alleges that "at the times mentioned herein said defendants told said persons trying to reach said plaintiffs that said telephone was disconnected . . . that the reasonable meaning of said response by said defendants . . . was that said plaintiffs had not paid defendants for their services . . . said persons reasonably believed that each plaintiff had not paid defendants for their services." There is no mention of special damages as defined in section 48a, Civil Code.[1]

The above pleading is fatally defective in more than one respect. First, unless the communication is defamatory on its face an averment of special damages is required. (*Babcock* v. *McClatchy Newspapers,* 82 Cal.App.2d 528, 537 [186 P.2d 737].) While the count before us (liberally interpreted) charges plaintiffs with failure to pay their debts, that does not make it defamatory *per se.* There is no implication that plaintiffs failed to pay their obligations from dishonest motives or from a desire to defraud their creditor. Absent some allegation that plaintiffs were engaged in a vocation where credit is an important asset and necessary for the proper conduct of their business, the instant communication in a legal sense would not expose plaintiffs to public contempt or ridicule, not tend to degrade them in society. (See 33 Am.Jur., Libel and Slander, § 60, p. 78; Harper on Torts

---

[1] "Special damages" are defined by section 48a as "all damages which plaintiff alleges and proves he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel, and no other."

§ 243, p. 521.) Second, the count asks for punitive damages without any allegation charging malice on defendant's part. The cases hold that where such damages are sought, malice in fact must be alleged (*Davis* v. *Hearst,* 160 Cal. 143 [116 P. 530]); and it has been declared that the failure to do so supports the contention that the complaint fails to state a cause of action. (*Jackson* v. *Underwriters' Report, Inc.,* 21 Cal.App.2d 591, 595 [69 P.2d 878].) There is much merit in other claims that the count is additionally deficient from a pleading standpoint; no good purpose being served thereby, we refrain from a discussion thereof.

The amended pleading in question was plaintiffs' fifth attempt to state several causes of action under several theories of recovery. ▇▇▇ True, the trial court should be liberal in allowing amendments where the defect in the pleading is one of form only; but a litigant does not have a positive right to amend his pleading after a demurrer thereto has been sustained. "His leave to amend afterward is always of grace, not of right. (Code Civ. Proc., § 472.)" (*Billesbach* v. *Larkey,* 161 Cal. 649, 653 [120 P. 31].) ▇▇▇ It is clear that the trial court could reasonably conclude that the complaint was incapable of being amended to state a cause of action; that being so, it did not abuse its discretion in sustaining the demurrer without leave to amend. (*Ruinello* v. *Murray,* 36 Cal.2d 687, 690 [227 P.2d 251].)

The judgment is affirmed.

Wood, P. J. and Fourt, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 7, 1965. Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.