Filed 4/26/18 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF
CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LAINE HEDWALL,<br><br>Cross-complainant and Appellant.<br><br>v.<br><br>PCMV, LLC et al.,<br><br>Cross-defendants and Respondents. | B282111<br>(Los Angeles County<br>Super. Ct. No. PC056295)<br><br>ORDER MODIFYING<br>OPINION<br><br>[NO CHANGE IN<br>JUDGMENT] |

THE COURT:*

It is ordered that the opinion filed herein on April 19, 2018
be modified as follows:

On page 2, line 1: add "Stream Kim Hicks Wrage & Alfaro;"
before Gresham Savage Nolan & Tilden.

The modification does not change the judgment.

_____

*WILLHITE, Acting P. J.      MANELLA, J.      COLLINS, J.

Filed 4/19/18 (unmodified version)

# CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LAINE HEDWALL, <br><br> Cross-complainant and Appellant. <br><br> v. <br><br> PCMV, LLC et al., <br><br> Cross-defendants and Respondents. | B282111 <br> (Los Angeles County <br> Super. Ct. No. PC056295) |

 APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen Pfahler, Judge.  Affirmed.

 Laine Hedwall, in pro.per., for Cross-complainant and Appellant.

 Hunton & Williams, Alexandrea H. Young and Andrew J. Peterson for Cross-defendant and Respondent CF Valencia Arcis LLC.

Gresham, Savage, Nolan & Tilden, Robert J. Hicks and Andrea Rodriguez for Cross-defendant and Respondent CLP Valencia Golf.

––––––––––––––––––––––––––––

In the underlying action, appellant Laine Hedwall filed a cross-complaint against respondent CLP Valencia Golf, LLC, formerly known as CNL Income Valencia LLC (CLP), respondent CF Valencia Arcis, LLC (Arcis), and PCMV, LLC, doing business as Valencia Country Club (PCMV), asserting claims for breach of contract, fraud, declaratory relief, and related causes of action. When the trial court sustained CLP's demurrer to the cross-complaint with leave to amend, Hedwall filed a first amended cross-complaint (FACC). CLP then demurred to all but one of the claims against it in the FACC. While CLP's demurrer to the FACC was pending, and without seeking leave of the trial court, Hedwall filed a second amended cross-complaint (SACC). The trial court "canceled" the filing of the SACC on its own motion, sustained CLP's demurrer to the FACC without leave to amend, and later granted judgment on the pleadings in CLP's favor on Hedwall's sole remaining claim against CLP. After Hedwall noticed this appeal, the trial court denied his request for an order staying the proceedings relating to Arcis and PCMV.

Hedwall challenges the rulings canceling the filing of the SACC, denying leave to amend the FACC, and denying the requested stay. We reject his contentions and affirm.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In February 2015, PCMV commenced the underlying action, asserting a single claim against Hedwall for an open book account.  PCMV sought $4,218.84 in damages plus interest.

Hedwall's original cross-complaint, filed March 25, 2015, contained claims against PCMV, CLP, Arcis, and other parties for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, unfair business practices (Bus. & Prof. Code, § 17200 et seq.), and intentional interference with contractual relations. Hedwall requested $70,000 in compensatory damages, prejudgment interest, and punitive damages.

The cross-complaint alleged the following facts: Hedwall is among the best golfers in the United States.  In 2004, he decided to join the Valencia Country Club -- then owned and managed by the Heritage Golf Group -- due to its excellent fairways and greens.  In March 2004, Hedwall and the club's manager entered into an oral agreement under which Hedwall was to receive a full refund of his $70,000 membership fee if the golf course ever fell below the then-existing standards.  At some point, CLP bought the club, and in January 2012, CLP leased it to PCMV.  During that lease,

3

the club was managed by Foregolf Partners, LLC (Foregolf). In August 2014, Foregolf and PCMV breached Hedwall's membership agreement by permitting the golf course to deteriorate. Hedwall told them that in view of that breach, he would pay no monthly dues until the golf course was restored to an acceptable level. In November 2014, Arcis acquired the club. Later, PCMV asserted its claim against Hedwall for unpaid monthly dues.

CLP demurred to the cross-complaint, contending the claims against it failed because the alleged misconduct was attributed solely to Foregolf and PCMV. Following a hearing, the trial court sustained CLP's demurrer with leave to amend, noting that nothing in the cross-complaint showed that CLP had committed any wrongful conduct.[1]

In December 2015, Hedwall filed the FACC, which, in addition to the claims previously alleged, included new claims for conversion and declaratory relief. CLP demurred to the FACC's claims, with the exception of a single claim for declaratory relief, contending the FACC assigned no specific wrongful conduct to CLP. Noting the FACC's allegation that CLP "performed [its] duties under the agreement between the parties, despite there being no signed membership agreement," CLP argued that Hedwall was "seeking to hold [it] liable for wrongful conduct . . . perpetrated by other

---

[1] Arcis and PCMV also demurred to the cross-complaint. The record does not contain the trial court's rulings on those demurrers.

4

parties without alleging how that wrongful conduct is attributable to CLP."

Arcis and PCMV also asserted demurrers to the FACC. Like CLP, Arcis contended the claims against it failed -- with the exception of a single claim for declaratory relief -- because no misconduct was alleged against it. PCMV challenged only some of the claims against it, namely, those for fraud, unfair business practices, and intentional interference with contractual relations.

While the demurrers to the FACC were pending, Hedwall filed the SACC without leave of the trial court. In March 2016, at the hearing on PCMV's demurrer, the trial court "canceled" the filing of the SACC on its own motion, stating that "there was no stipulation among the parties or court order allowing for such filing." The court further sustained PCMV's demurrer to the FACC without leave to amend. Later, in August 2016, the court sustained CLP's and Arcis's demurrers to the FACC without leave to amend, concluding that the FACC alleged no misconduct attributable to CLP or Arcis.

In January 2017, CLP sought judgment on the pleadings regarding the FACC's remaining claim against it for declaratory relief. CLP contended the claim was moot, because the FACC alleged that CLP no longer owned the club. On March 14, 2017, following a hearing, the trial court granted judgment on the pleadings with respect to the declaratory relief claim without leave to amend.

5

On March 27, 2017, Hedwall noticed this appeal. Following the filing of the notice of appeal, Arcis and PCMV sought summary judgment and judgment on the pleadings regarding the FACC's remaining claims against them. Hedwall requested an order staying all proceedings under Code of Civil Procedure section 916 due to his pending appeal, which the trial court denied.

## DISCUSSION

Appellant contends the trial court erred in canceling the filing of the SACC, denying leave to amend the FACC, and denying the requested stay. As explained below, we reject his contentions regarding the SACC and the FACC. We further conclude that his challenge to the denial of the stay is not properly before us.

A. *Scope of Review*

At the outset, we examine the scope of our review of the trial court's rulings. Generally, "[a]n appealable judgment or order is a jurisdictional prequisite to an appeal. [Citations.]" (*Connell v. Superior Court* (1997) 59 Cal.App.4th 382, 392.) Here, Hedwall's March 27, 2017 notice of appeal states that the appeal was taken from an undated and unspecified judgment of dismissal; his opening brief further states that the appeal was taken from a judgment in CLP's favor.

The record that Hedwall has provided contains no such judgment. Under the "'one final judgment'" rule, an appeal

6

cannot be taken from a judgment that fails to resolve to finality all the causes of action pending between the parties. (*Hill v. City of Clovis* (1998) 63 Cal.App.4th 434, 442-443.) The cancellation of the filing of the SACC, by itself, did not resolve Hedwall's claims against CLP in the FACC; furthermore, the rulings in CLP's favor on its demurrer to the FACC and motion for judgment on the pleadings are not appealable orders (*Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1695; *Ellerbee v. County of Los Angeles* (2010) 187 Cal.App.4th 1206, 1212-1213). Although Hedwall's brief refers to a March 31, 2017 order of dismissal in CLP's favor, the record discloses only a "Notice of Entry of Judgment on the Pleadings" filed by CLP on that date, stating that due to the grant of judgment on the pleadings, "there remain[] no further causes of action against . . . [CLP]." There is thus no appealable judgment in favor of CLP.

Under the circumstances, it is appropriate to amend the rulings to include such a judgment, rather than dismiss the appeal. (See *Estate of Dito* (2011) 198 Cal.App.4th 791,799-800.) The rulings on the SACC and FACC effectively ended Hedwall's litigation against CLP, which has not been prejudiced by his failure to secure an appealable judgment, as it has fully briefed his challenges to those rulings. Accordingly, in the interest of judicial economy, we deem the rulings to incorporate a judgment of dismissal in favor of CLP, for purposes of Hedwall's notice of appeal. For that reason, Hedwall's challenges to the rulings

7

on the SACC and the FACC, insofar as they relate to CLP, are properly before us.

The scope of Hedwall's appeal is nonetheless subject to certain limitations. Ordinarily, orders rendered after the judgment or order from which an appeal is noticed do not fall within the scope of that appeal. (See *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 180, p. 256.) Accordingly, our decision to incorporate a judgment in favor of CLP establishes no corollary judgment in favor of Arcis or PCMV, as the trial court's rulings on their demurrers to the FACC did not resolve all of Hedwall's claims against them prior to this appeal. Furthermore, our decision to incorporate a judgment in favor of CLP does not expand the scope of Hedwall's appeal to encompass the denial of the requested order under Code of Civil Procedure section 916, which occurred after the rulings on the SACC and FACC.[2]

Although orders relating to the enforcement of a judgment subject to an appeal are themselves generally independently appealable (see *Williams v. Thomas* (1980) 108 Cal.App.3d 81, 84-86), the appropriate method of challenging the denial of an order to enforce the stay arising under section 916 is a petition for writ of supersedeas (*Estate of Dabney* (1951) 37 Cal.2d 402, 408; *Chapala Management Corp. v. Stanton* (2010) 186 Cal.App.4th 1532, 1541, fn. 8).

---

[2] All further statutory citations are to the Code of Civil Procedure, unless otherwise indicated.

8

Here, Hedwall neither noticed a separate appeal from the denial of the stay nor sought relief by writ of supersedeas. We discuss the consequences of those omissions below (see pt. D. of the Discussion, *post*).

On a related matter, we note that Arcis has filed a brief in this appeal as a respondent, even though Hedwall's notice of appeal identifies no appealable judgment or order in favor of Arcis. Arcis's principal contention is that the denial of the section 916 stay is not properly within the scope of this appeal. Because Hedwall refers to Arcis as a respondent and asserts no objection to Arcis's participation in the appeal, he has forfeited any contention that its appearance as a respondent is improper.

B. *Cancellation of the Filing of the SACC*

We begin with Hedwall's challenge to the cancellation of the filing of the SACC.[3] Generally, the trial court "may . . . at any time in its discretion . . . [¶] . . . [¶] . . . [s]trike out all or any part of any pleading not drawn or filed in conformity with the laws of this state . . . ." (§ 436, subd.

---

[3] Arcis suggests that the cancellation of the SACC falls outside the scope of our review. However, under section 906, an appellate court is authorized to review "any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from . . . ." The cancellation of the SACC is thus properly before us, as it rendered the rulings on the FACC's claims against CLP the equivalent of a final judgment in favor of CLP.

9

(b).)  Here, relying on section 472, the trial court canceled the filing of the SACC on its own motion because no court order or stipulation of the parties permitted the SACC to be filed.

The key issue is whether that ruling was authorized by section 472, which was originally enacted in 1872. (Historical and Statutory Notes, 15 West's Ann. Code Civ. Proc. (2018 supp.) & foll. § 472, p. 10.)  At the time of the underlying ruling, subdivision (a) of section 472 stated:  "A party may amend its pleading once without leave of the court at any time before the answer or demurrer is filed, or after a demurrer is filed but before the demurrer is heard if the amended complaint . . . is filed and served no later than the date for filing an opposition to the demurrer.  A party may amend the complaint . . . after the date for filing an opposition to the demurrer, upon stipulation by the parties."[4] Section 472 affords parties a broad amendment right within

---

[4]  For the sake of simplicity, we generally refer to the applicable statute as section 472, as the current version of the statute is materially similar.  In pertinent part, subdivision (a) of section 472 now provides:  "A party may amend its pleading once without leave of the court at any time before the answer, demurrer, or motion to strike is filed, or after a demurrer or motion to strike is filed but before the demurrer or motion to strike is heard if the amended pleading is filed and served no later than the date for filing an opposition to the demurrer or motion to strike.  A party may amend the pleading after the date for filing an opposition to the demurrer or motion to strike, upon stipulation by the parties."

the specified time restrictions, as it "does not limit [the] types of amendments [that] may be made of course and without leave of court." (*Gross v. Department of Transportation* (1986) 180 Cal.App.3d 1102, 1105 (*Gross*).)

Hedwall contends that section 472 entitled him to file the SACC without leave of the trial court or a stipulation of the parties. The crux of his contention is that under section 472, the plaintiff's right to file an amended complaint once as a matter of right is not restricted to an amended version of the *original* complaint. He argues that a plaintiff may amend one version of the operative complaint -- which need not be the original complaint -- as a matter of right, provided that the amended complaint is filed before any answer and within the specified time restrictions relating to demurrers. He thus maintains that he was entitled to file an amended version of the FACC -- that is, the SACC -- because he filed and served the SACC (1) before any answer was filed, and (2) by the date any opposition to the then-pending demurrers to the FACC by CLP, Arcis, and PCMV was due. As explained below, we reject his contention.

Hedwall presents what appears to be an issue of first impression. Although the section 472 right to amend has long been regarded as confined to the original complaint, no published decision has squarely held the right is so limited. A treatise states that under section 472, "[e]ach party has the *right* to amend its pleadings *once* -- without leave of court -- within a brief time after its original pleading is filed. The purpose is to facilitate prompt correction of errors or

11

deficiencies in the original pleading." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2017) § 6:602.) The treatise nonetheless acknowledges a potential issue regarding whether the right attaches to an amended complaint filed after a demurrer has been sustained with leave to amend, but observes: "[T]here is no known reported decision permitting this. Also, the statutory wording that a party 'may amend its pleading *once* without leave of court" may be interpreted to preclude an amendment to an amended pleading." (*Id.* at § 6:610.5.)

The key question before us is thus one of statutory interpretation, namely, whether the statutory phrase noted above permitted the filing of the SACC. In order to resolve that question, we seek the legislative intent, looking first to the plain meaning of the statutory language. (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437.) However, "the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.]" (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)

In our view, Hedwall's contention fails in light of the manner in which the term "pleading" and its variants are generally used within the Code of Civil Procedure. Ordinarily, the code employs the term "pleading" in a generic manner, that is, to refer to certain documents setting forth the claims and defenses in the litigation. Thus, section 420 defines "[t]he pleadings" as "the formal allegations by the parties of their respective claims and defenses, for the

12

judgment of the court," and section 422.10 specifies that "[t]he pleadings allowed in civil actions are complaints, demurrers, answers, and cross-complaints."  Under the generic understanding of the term "pleading," the plaintiff initiates and maintains the action by asserting "the complaint," to which the defendant responds with "[t]he demurrer" or "'the answer.'"  (4 Witkin, Cal. Procedure, *supra,* Pleading, § 470, p. 600; 5 Witkin, Cal. Procedure, *supra*, Pleading, §§ 946, 1045, pp. 358-360, 488.)  However, as discussed further below, when appropriate, the Legislature sometimes employs descriptive terms referring to a specific version of a pleading.

Under the generic understanding of the term "pleading," section 472 is reasonably viewed as limiting the right to amend "the complaint" as a matter of right to the complaint as originally filed, that is, the version of the complaint that commences the action.  Within the statute, the phrase "[a] party may amend *its pleading* once without leave of the court" is followed by time restrictions specified in similarly generic terms, that is, "before the answer or demurrer," or no later than the date for filing an opposition to a demurrer.  (§ 472, subd. (a), italics added.)  When the italicized term is understood to refer to the complaint as a generic document -- that is, as *the* document by which the plaintiff commences and maintains the litigation, regardless of how many times it is amended -- only the original version of the complaint appears to satisfy the restrictions.  That is because only the original version of the complaint is filed

13

before "the answer or demurrer," viewed as the generic documents by which the defendant alleges defenses. By parity of reasoning, under section 472, the right to amend a cross-complaint as a matter of right is similarly limited to the original version of the cross-complaint.

The interpretation of section 472 set forth above finds support in *Billesbach v. Larkey* (1911) 161 Cal. 649 (*Billesbach*) and *People ex rel. Dept Pub. Wks. v. Clausen* (1967) 248 Cal.App.2d 770 (*Clausen*). Those decisions addressed prior versions of section 472 which provided in material part that "[a]ny pleading may be amended once by the party of course . . . at any time before the answer or demurrer is filed, or entered in the docket, or after demurrer and before the trial of the issue of law thereon." (Historical Note, 15 West's Ann. Cal. Code Civ. Proc. (1979) foll. § 472, p. 45.) In each case, the reviewing court stated that after a demurrer is sustained to the *original* complaint or cross-complaint with leave to amend, the proponent of that pleading loses the statutory entitlement to file an amended pleading as a matter of right.

In *Billesbach*, the trial court sustained demurrers with leave to amend to successive amended versions of the plaintiff's complaint before sustaining a demurrer to his third amended complaint without leave to amend. (*Billesbach*, *supra*, 161 Cal. at pp. 653-654.) Affirming the denial of leave to amend, our Supreme Court noted the liberal policy of permitting amendment, but stated in reference to section 472: "The plaintiff does not have a

14

positive right to amend his pleading *after a demurrer has been sustained . . . .* His leave to amend afterward is always of grace, not of right." (*Billesbach, supra,* at p. 653, italics added; accord, *Gautier v. General Tel. Co.* (1965) 234 Cal.App.2d 302; *Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 612-613.) That statement, though a dictum, provides guidance here. (*Smith v. County of Los Angeles* (1989) 214 Cal.App.3d 266, 297 [a dictum of the Supreme Court "while not controlling authority, carries persuasive weight and should be followed where it demonstrates a thorough analysis of the issue or reflects compelling logic"].)

In *Clausen*, the trial court sustained a demurrer to the defendant's cross-complaint against the plaintiff with leave to amend. (*Clausen*, *supra*, 248 Cal.App.2d at p. 783.) When the defendant filed an amended cross-complaint against the plaintiff and two new parties, the trial court granted motions to strike by all three cross-defendants on the ground that the defendant had failed to secure leave to file such a cross-complaint. (*Id.* at pp. 782-783.) The appellate court affirmed the rulings on the motions to strike by the new cross-defendants, but reversed the ruling on the motion to strike by the plaintiff. (*Ibid.*) Regarding the latter ruling, the court stated that "although under the provisions of section 472 [the defendant] was *not* entitled to file [the amended cross-complaint] as a matter of course, the trial court, by sustaining [the plaintiff's] demurrer to [the] original cross-complaint with leave to amend, specifically

15

gave [the defendant] the requisite permission to file the amended cross-complaint." (*Id*. at p. 783, italics added.)[5]

Hedwall contends that section 472 reflects his interpretation, pointing to the differences between that statute and its immediate predecessor. We disagree. "Although a substantial change in the language of a statute by an amendment indicates an intention to change its meaning, a mere change in phraseology, incident to a revision of the statute, does not result in a change of meaning unless the intent to make such a change clearly appears. [Citation.] Thus, surrounding circumstances may indicate that an amendment was merely the result of a legislative attempt to clarify the true meaning of the statute.

---

[5] Hedwall suggests that *Clausen* is inconsistent with the holding in *Gross*, *supra*, 180 Cal.App.3d 1102. We disagree. In *Gross*, the plaintiffs' original complaint asserted claims against several defendants. (*Id*. at p. 1104.) Prior to any answer or demurrer, the plaintiffs filed an amended complaint that added a new defendant and a new claim against one of the original defendants. (*Ibid*.) The new defendant filed a motion to strike the amended complaint, which the trial court granted. (*Ibid*.) Reversing, the appellate court held that section 472 imposes no limit on the amendments permitted under that statute, provided that the amended complaint is filed within the specified time restrictions. (*Gross, supra,* at pp. 1105-1106.) *Gross* addressed the right to amend the original complaint under section 472 before an answer or demurrer had been filed. *Clausen* addressed the right to file an amended cross-complaint following the sustaining of a demurrer after leave of court had been granted to do so. Nothing in *Gross* conflicts with *Clausen*.

16

[Citation]." (*DeCastro West Chodorow & Burns, Inc. v. Superior Court* (1996) 47 Cal.App.4th 410, 418.) With respect to the right to amend, the immediate predecessor of section 472 was materially identical to the versions of section 472 at issue in *Billesbach* and *Clausen*. (See former section 472, enacted Stats. 1983, ch. 142, § 4, p. 334, repealed Stats. 2015, ch. 418, § 2, No. 6 West's Cal. Legis. Service, p. 3783.) Because there are only minor differences between the current statute and its predecessors, we discern no change in legislative intent.[6]

Hedwall directs our attention to *Tingley v. Times Mirror Co.* (1907) 151 Cal. 1 (*Tingley*), which examined a version of section 472 similar to those discussed in *Billesbach* and *Clausen*. In *Tingley*, the plaintiff asserted a defamation claim against the defendant newspaper. (*Tingley, supra*, at p. 7.) After the newspaper's demurrer to the complaint was overruled, it filed an answer. (*Ibid*.) The

---

[6] The immediate statutory predecessor stated that "[a]ny pleading may be amended once by the party of course . . . at any time before the answer or demurrer is filed, or entered in the docket, or after demurrer and before the trial of the issue of law thereon." (Stats. 1933, c. 744, § 31.) The current statute reads: "A party may amend its pleading once without leave of the court at any time before the answer, demurrer, or motion to strike is filed, or after a demurrer or motion to strike is filed but before the demurrer or motion to strike is heard if the amended pleading is filed and served no later than the date for filing an opposition to the demurrer or motion to strike." (Stats. 2017, c. 273, § 3.)

day before the trial commenced, the newspaper filed an amended answer, asserting for the first time the defense of justification. (*Id.* at p. 8.) At the plaintiff's request, the trial court struck the amended answer, and the plaintiff prevailed on her claim at trial. (*Id.* at pp. 7-9.)

On appeal, the newspaper contended that section 472 entitled it to file the amended answer as a matter of right because the plaintiff had not demurred to the original answer. (*Tingley, supra,* 151 Cal. at p. 10.) Our Supreme Court rejected the contention, concluding that section 472 must be construed to afford plaintiffs and defendants "equal" rights to amend. (*Tingley,* at pp. 11-12.) The court stated that under the statute "the right of plaintiff to amend his complaint as of course is extended only up to the time when the answer of defendant is filed, or if a demurrer is interposed by defendant only while the issue of law raised thereby is undetermined." (*Id.* at p. 10.) The court thus held that "[t]he right of defendant to amend can be exercised only during the time that a demurrer to the answer if interposed by plaintiff is undetermined, or should the plaintiff not demur, then the defendant is concluded from amending as of course . . . by the expiration of the time within which such demurrer might have been interposed." (*Id.* at p. 11.)

Relying on the court's use of the term "undetermined," Hedwall maintains that under *Tingley*, section 472 permits a plaintiff to amend a version of a complaint -- not necessarily the original complaint -- once as a matter of right unless and until a demurrer is sustained without leave to amend.

18

Notwithstanding that term, however, nothing in *Tingley* reasonably suggests that the section 472 right to amend is properly exercised at any time before the complaint's legal adequacy is determined to finality.[7]  The Supreme Court did not examine that issue, and the pertinent version of section 472 provided only that the plaintiff may amend the complaint "before the trial of the issue of law" on the demurrer, that is, before the hearing on the demurrer. (*Tingley, supra,* 151 Cal. at p. 9.)

Hedwall also contends his proffered interpretation of section 472 finds support in a related statute, namely, section 430.41.  In 2015, upon adopting the version of section 472 pertinent here, the Legislature enacted section 430.41, which establishes a "meet and confer" process relating to the amendment of pleadings (§ 430.41, subd. (a)(1)).  (Stats. 2015, ch. 418, § 1, p. 2.)  Subdivision (a) of the latter statute provides:  "Before filing a demurrer . . . , the demurring

---

[7]	Although "our Supreme Court's decisions bind us . . . , 'language contained in a judicial opinion is "'to be understood in the light of the facts and issue then before the court, and an opinion is not authority for a proposition not therein considered. [Citation.]'" [Citations.]' [Citation.]  When questions about an opinion's import arise, the opinion 'should receive a reasonable interpretation [citation] and an interpretation which reflects the circumstances under which it was rendered [citation]' [citation], and its statements should be considered in context [citation]." (*Dyer v. Superior Court* (1997) 56 Cal.App.4th 61, 66.)

party shall meet and confer in person or by telephone with the party who filed the pleading that is subject to demurrer for the purpose of determining whether an agreement can be reached that would resolve the objections to be raised in the demurrer. If an amended complaint . . . is filed, the responding party shall meet and confer again with the party who filed the amended pleading before filing a demurrer to the amended pleading."

Hedwall maintains that only his interpretation harmonizes section 472 with subdivision (c) of section 430.41, which provides: "If a court sustains a demurrer to one or more causes of action and grants leave to amend, the court may order a conference of the parties before an amended complaint or cross-complaint or a demurrer to an amended complaint or cross-complaint, may be filed. If a conference is held, the court shall not preclude a party from filing a demurrer and the time to file a demurrer shall not begin until after the conference has concluded. Nothing in this section prohibits the court from ordering a conference on its own motion at any time or prevents a party from requesting that the court order a conference to be held." As that provision merely authorizes the trial court to order a conference upon sustaining a demurrer with leave to amend, the provision offers no support for Hedwall's interpretation of section 472.

Hedwall further contends his proffered interpretation of section 472 is reflected in subdivision (e)(1) of section 430.41, which imposes a limit on the number of times a

complaint may be amended.  Subdivision (e)(1) of the statute states: "In response to a demurrer and prior to the case being at issue, a complaint or cross-complaint shall not be amended more than three times, absent an offer to the trial court as to such additional facts to be pleaded that there is a reasonable possibility the defect can be cured to state a cause of action.  The three-amendment limit shall not include an amendment made without leave of the court pursuant to Section 472, *provided the amendment is made before a demurrer to the original complaint or cross-complaint is filed.*"  (Italics added.)

Hedwall suggests that the italicized phrase implies that the section 472 right to amend may be applied to versions of the complaint or cross-complaint other than the original pleading.  We disagree.  The apparent function of the phrase is to eliminate an ambiguity regarding the application of the three-amendment limit to section 472, namely, whether an amended version of the original complaint (or cross-complaint) filed after a demurrer has been filed is necessarily submitted "[i]n response to a demurrer" (§ 430.41, subd. (e)(1)).  The ambiguity arises from the possibility that a plaintiff (or cross-complainant) might amend the original complaint after a demurrer is filed without making any amendments responsive to the defects asserted in the demurrer, for example, by alleging new claims.  (*Gross*, *supra*, 180 Cal.App.3d at p. 1105.)  The italicized phrase forecloses that ambiguity, as it establishes that only amended versions of the original complaint filed

*before* a demurrer are exempt from the three-amendment limit.  In sum, the trial court did not err in striking the SACC because it was improperly filed under section 472.[8]

C. *Denial of Leave to Amend the FACC*

Hedwall contends the trial court abused its discretion in denying leave to amend the FACC.[9]  However, notwithstanding the liberal policy favoring amendment of complaints, upon sustaining a demurrer to a first amended complaint, the court may deny leave to amend when the plaintiff fails to demonstrate the possibility of amendments curing the first amended complaint's defects.  (See *Lantzy v.*

---

[8]     At CLP's request, we have taken judicial notice of a portion of the legislative history of section 430.41.  We discern nothing in that history that supports Hedwall's proffered interpretation of section 472.

[9]     Although Hedwall's opening brief also asserts that the trial court erred in sustaining CLP's demurrer to the FACC, he does not, in fact, attack that ruling.  His briefs contain no argument (supported by legal authority and citations to the record) aimed at demonstrating that the FACC states any cognizable claim against CLP.  Rather, his focus is on whether the trial court erred in denying leave to amend.  Accordingly, Hedwall has forfeited his challenge to the ruling on CLP's demurrer to the FACC. (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1504; see *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784.)

*Centex Homes* (2003) 31 Cal.4th 363, 386-388.)  As explained below, Hedwall has made no such demonstration.

"To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.]  The assertion of an abstract right to amend does not satisfy this burden.  [Citation.]  The plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it.  Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action.  [Citations.]  Allegations must be factual and specific, not vague or conclusionary.  [Citation.] [¶] The burden of showing that a reasonable possibility exists that amendment can cure the defects remains with the plaintiff; neither the trial court nor this court will rewrite a complaint.  [Citation.] Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend.  [Citations.]" (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44.)

Hedwall identifies no new allegations supporting the possibility of amending the FACC to cure its defects, and no legal authority showing the viability of any potential causes of action against CLP.  He argues solely that subdivision

(e)(1) of section 430.41 entitled him to a minimum of three opportunities to amend his cross-complaint.  However, nothing in that statute is reasonably understood to create such an entitlement, as it states only that subject to specified conditions, "a complaint or cross-complaint shall not be amended *more* than three times" (§ 430.41, subd. (e)(1), italics added).  Accordingly, Hedwall has shown no error in the denial of leave to amend the FACC.[10]

D.  *Denial of Stay Order*

Hedwall contends the trial court erred in denying his request for an order enforcing the automatic stay imposed under section 916, subdivision (a).  He argues that the automatic stay necessarily applied to the post-appeal proceedings relating to Arcis and PCMV.

For the reasons explained above (see pt. A. of the Discussion, *ante*), Hedwall's challenge to a ruling made after the trial court issued its rulings on the SACC and FACC falls outside of the scope of this appeal.  We therefore lack the jurisdiction to consider it.  We further decline to treat Hedwall's briefs on appeal as a petition for writ of supersedeas, as Hedwall has not requested that we do so,

---

[10]     In a related contention, Hedwall asserts that no conference was held under section 430.41 prior to the rulings on the demurrers to the FACC.  However, as he has not shown how any such conference might have resulted in an outcome more favorable to him, he has demonstrated no reversible error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

24

and his briefs do not satisfy the procedural rules for such a petition, which require notice that a stay is sought from the appellate court (Cal. Rules of Court, rule 8.116). Hedwall's failure to comply with the notice requirement cannot be regarded as harmless because PCMV has not appeared in this appeal. In sum, the trial court's ruling on Hedwall's request for a stay is not properly before us.[11]

---

[11] We would reject Hedwall's contention were we to consider it. Under subdivision (a) of section 916, with certain exceptions, "'the perfecting of an appeal automatically stays proceedings in the trial court upon the judgment or order appealed from, or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order.'" (*Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1428.) The purpose of the automatic stay rule is "'to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided.'" (*Elsea v. Saberi* (1992) 4 Cal.App.4th 625, 629.) However, the automatic stay does not suspend trial court proceedings on the remaining components of the litigation, for example, claims against other parties -- such as Arcis and PCMV -- not resolved by the judgment or order under appeal. (See *McFarland v. City of Sausalito* (1990) 218 Cal.App.3d 909, 912; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2017) ¶ 7:36.)

## DISPOSITION

The orders of the trial court are deemed to incorporate a judgment of dismissal in favor of CLP, which is affirmed. Respondents CLP and Arcis are awarded their costs on appeal.

**CERTIFIED FOR PUBLICATION**


MANELLA, J.


We concur:




WILLHITE, Acting P. J.




COLLINS, J.