Filed 11/21/24  Izard v. The Scripps Research Institute CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| TINA IZARD, Plaintiff and Appellant, v. THE SCRIPPS RESEARCH INSTITUTE, Defendant and Respondent. | D082648 (Super. Ct. No. 37-2022-00010695-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Ferguson Case Orr Paterson, Wendy C. Lascher, and John A. Hribar for Plaintiff and Appellant.

Quarles & Brady, Sandra L. McDonough, and Matthew W. Burris for Defendant and Respondent.

Tina Izard appeals from a judgment entered in favor of defendant The Scripps Research Institute (the Institute) on Izard's breach of contract claim. Izard contends the trial court erred in granting summary judgment because the Institute did not meet its burden of demonstrating the absence of damages.  Izard further contends that even if the Institute met its initial

burden as the moving party, she established triable issues of fact regarding damages. We disagree with Izard's contentions and affirm the judgment in favor of the Institute.[1]

FACTUAL AND PROCEDURAL BACKGROUND

*A. Izard's Employment*

The following facts are undisputed. The Institute's primary campus is in La Jolla, California, but it used to have a second campus in Jupiter, Florida. The Institute hired Izard in 2007 as a tenured associate professor in the Department of Cancer Biology at its campus in Florida, where Izard has lived since then.

In 2021, the University of Florida (University) contacted the Institute to explore transferring all the Institute's assets, liabilities, rights, and obligations associated with its Jupiter campus to the University. After Izard learned of the planned transfer, she served on the Institute's faculty advisory committee to assist the Institute with identifying and negotiating employment issues connected with the transition. Those issues included compensation, benefits, and tenure for the Institute's faculty.

The Institute and the University eventually entered an agreement to convey nearly all the Institute's Florida property and operations to the University. Employment issues negotiated by the Institute's faculty advisory committee became part of the agreement, including an obligation that the University provide employees hired from the Institute with "no less favorable cash compensation" and "benefits no less favorable" than those they enjoyed

---

[1] Because we find no error in the trial court's ruling on the absence of damages, we need not and do not address the other grounds for summary judgment raised by the parties.

at the Institute. These benefits included, without limitation "paid vacation, holidays and sick leave, retirement," fringe, and other benefits.

In December 2021, the University offered Izard a tenured professor position in its Health Science Center. As part of its offer, the University increased Izard's salary by three percent to comply with a state-required retirement contribution. Izard initially rejected the offer and applied to several other research institutions. But in March 2022, at Izard's request, the University reopened its prior employment offer and she accepted it.

At the time Izard began her employment with the University in April 2022, she had three federal grants. Izard described the transfer of those grants to the University as "seamless." Izard retained an affiliation with the Institute, which meant keeping her privileges with its graduate program, being listed as "Affiliated Faculty" on the Institute's website, and retaining her email address.

B. *Complaint*

Izard sued the Institute for breach of contract, alleging that it failed to meet the conditions of termination in its "Faculty Bylaws and Administrative Guidelines." Specifically, Izard alleged that the Institute was contractually obligated to (1) submit her grant applications after March 16, 2022, and (2) not terminate her appointment as a professor with tenure at the Institute. She claimed she was harmed by those breaches and sought "[d]amages to be proved at trial[,]" specific performance, and costs.

C. *Summary Judgment Motion*

The Institute filed a motion for summary judgment, or in the alternative, summary adjudication. It contended, among other things, that Izard failed to identify any recoverable damages she had not fully mitigated. Izard opposed the motion, arguing that "[t]rials are about many things, one of

3

them being an opportunity for plaintiffs to prove damages." Based on that assertion, Izard claimed there was a triable issue of material fact as to whether Izard suffered damages that she had not mitigated.

At the motion hearing, Izard's counsel highlighted that Izard disputed the following statement from the Institute's separate statement of facts:

> "Logistically, nothing changed about Plaintiff's day-to-day work once she moved her employment to [the University]. Her office, lab, and equipment were the same before and after the asset transfer. Even her administrative support person at [the University] is the same she worked with at [the Institute]."

In her response to that statement, Izard referenced an April 2022 incident after the transfer in which a University IT employee "deleted 18 months of all the data" her laboratory generated without backing it up. Her counsel argued at the hearing that the Institute's transfer of assets proximately caused the data deletion because the deletion would not have happened but for the transfer.

D. *Trial Court's Ruling*

The trial court granted the Institute's summary judgment motion, finding the following facts undisputed: (1) Izard was a member of the faculty advisory committee that helped negotiate the transfer of assets and operations from the Institute to the University; (2) the committee negotiated issues such as compensation, benefits, and tenure; (3) Izard helped negotiate for all faculty who had tenured employment at the Institute to be hired under the University's tenure process; (4) the employees hired by the University, including Izard, received no less favorable benefits and compensation; and (5) Izard's daily work did not change, she maintained the same grants, and the transfer of grants was seamless. The court concluded that based on these

4

undisputed facts, the Institute met its initial burden of showing that Izard cannot prove the damage element of her breach of contract claim.

The court further found that Izard failed to meet her burden of presenting evidence of damages resulting from the Institute's alleged breach. The court noted that Izard provided an insufficient response to the Institute's separate statement that "nothing changed about [her] day-to-day work" because her response did not establish damages caused by the Institute.

DISCUSSION

When reviewing a trial court's ruling on a motion for summary judgment, "we examine the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

Summary judgment is appropriate when all the papers show there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subds. (a) & (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) A defendant who moves for summary judgment has the initial burden of showing the nonexistence of any triable issue of material fact. (*Aguilar*, at p. 850.) If the defendant meets its burden, the burden shifts to the plaintiff to produce evidence to make a prima facie showing of the existence of a triable issue of material fact. (*Ibid.*) If the plaintiff fails to meet that burden, the motion for summary judgment will be granted. (See *id.* at p. 857.) A triable issue of material fact exists if the evidence would allow a reasonable trier of fact to find the underlying facts in favor of the party opposing the motion in accordance with the applicable standard of proof. (*Id.* at p. 850.)

"A breach of contract without damage is not actionable." (*Patent Scaffolding Co. v. William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506, 511.) Izard argues on appeal that the Institute did not meet its initial burden of showing the absence of damages, and that even if it did, she established triable issues of fact regarding damages in the form of lost research data. We disagree.

The Institute met its burden of showing the absence of damages by demonstrating—through undisputed material facts—that Izard suffered no apparent harm from the Institution's transfer of assets to the University. Izard did not dispute that she knew about the transfer before it occurred and participated in an advisory committee that negotiated key employment terms of the transition. She played a role in negotiating compensation, benefits, and tenure, and she did not dispute that her compensation and benefits were the same or better than those she had at the Institute. Izard had tenure upon being hired at the University, and the transfer of her grant funding was "seamless." Moreover, according to her deposition testimony, Izard worked in the same office, using the same machinery and equipment, doing the same research funded by the same grant sponsors as when she worked for the Institute. To shift the burden to Izard, the Institute just had to make an initial showing of the nonexistence of any triable issue of material fact. (*Aguilar, supra*, 25 Cal.4th at p. 850.) Given the undisputed facts, we conclude the Institute successfully shifted the burden to Izard.

Izard argues that the Institute failed to refute the allegation of her complaint that she "was harmed when [the Institute] indicated it would not submit [her] grant applications after March 16, 2022." But the Institute asserted in its separate statement that Izard had three federal grants at the time of her transfer in April 2022, and that the transfer of these grants to the

6

University was "seamless." Izard admitted that these facts were undisputed. This was sufficient to negate the allegations of the complaint regarding Izard's grant applications. Contrary to her briefing on appeal, Izard's complaint did not specifically allege that her move to the University would affect the success of her future grant applications. The Institute was not required to anticipate and negate a theory of harm not adequately alleged in the complaint.

The burden therefore shifted to Izard to show a triable issue of material fact as to damages. We conclude she failed to do so. First, Izard did not argue below in her opposition brief or at the motion hearing that she suffered any damages stemming from the fact that the University, instead of the Institute, would be submitting her future grant applications. Her brief only made generic statements about proving damages at trial with no mention of grants. Nor did her response to the Institute's separate statements about changes to her compensation, benefits, and day-to-day work refer to any difficulties with obtaining future grants. At the motion hearing, Izard's counsel focused exclusively on the deleted research data and made no reference to any alleged loss of prestige or grant resources associated with Institute employment—allegations which were also absent from her complaint.[2] Izard has therefore forfeited this argument on appeal. (See *Rubinstein v. Fakheri* (2020) 49 Cal.App.5th 797, 808 [declining to consider

---

[2] Because Izard did not allege harm to her professional reputation or loss of prestige in her complaint, and also did not argue it in her summary judgment opposition or separate statement, the issue is not properly before us. We note, however, that in a breach of contract action, the plaintiff is generally not entitled to damages for injury to her name, character, or personal reputation. (*Gautier v. General Tel. Co.* (1965) 234 Cal.App.2d 302, 306; see also *Frangipani v. Boecker* (1998) 64 Cal.App.4th 860, 865 ["damages to reputation . . . are not recoverable in an action for breach of contract"].)

an argument on appeal that appellant did not make below].)  Indeed, Izard does not argue on appeal that if the Institute met its initial burden of negating the allegations of the complaint regarding grants, she established a triable issue of material fact on the issue.

Even if she had preserved her argument, the record before us contains only speculation about Izard's purportedly diminished ability to obtain grants through the University as compared to the Institute.  "To be actionable, harm must constitute something more than nominal damages, speculative harm, or the threat of future harm not yet realized."  (*See Buttram v. Owens–Corning Fiberglas Corp.* (1997) 16 Cal.4th 520, 531, fn. 4 [cleaned up].)  Damages may only be recovered if the evidence shows, with reasonable certainty, both their occurrence and extent.  (See *Food Safety Net Services v. Eco Safe Systems USA, Inc.* (2012) 209 Cal.App.4th 1118, 1132.)  Though not alleged in the complaint, Izard testified at her deposition that she believed her grants had a lower likelihood of being funded at the University than at the Institute because of factors such as "reputation" and "environment."  But Izard had no "understanding of the amount of funding that [the University] is able to get through grant awards every year," nor did she know how the University's funding might compare to the Institute's funding.  At the time of her deposition in August 2022, Izard had yet to submit a grant application through the University, and her existing grants had been renewed for a second year.  Any alleged decrease in her ability to obtain grants was therefore theoretical, speculative, and unrealized.

Second, Izard's argument that she suffered cognizable damages stemming from the loss of her research data—allegedly caused by the transfer of assets from the Institute to the University—is also unpersuasive because those damages were not sufficiently foreseeable.  There are two types

8

of contract damages: "general damages (sometimes called direct damages) and special damages (sometimes called consequential damages). General damages are often characterized as those that flow directly and necessarily from a breach of contract, or that are a natural result of a breach." (*Moore v. Centrelake Medical Group, Inc.* (2022) 83 Cal.App.5th 515, 531–532 (*Moore*) [cleaned up].) Izard does not contend, nor could she, that damages from the lost data constitute general damages.

Rather, Izard's alleged damages from the deleted data fall into the category of special damages because they "represent loss that occurred by reason of injuries following from the breach." (*Moore, supra*, 83 Cal.App.5th at p. 532 [cleaned up].) Specifically, Izard contends that the Institute breached its employment contract with her when it transferred assets to the University, and that the University's accidental loss of her data followed from that transfer. But special damages, "unlike damages in tort, do not permit recovery for unanticipated injury." (*Lewis Jorge Construction Management, Inc. v. Pomona Unified School Dist.* (2004) 34 Cal.4th 960, 969 [cleaned up].) "Parties may voluntarily assume the risk of liability for unusual losses, but to do so they must be told, at the time the contract is made, of any special harm likely to result from a breach. Alternatively, the nature of the contract or the circumstances in which it is made may compel the inference that the defendant should have contemplated the fact that such a loss would be 'the probable result' of the defendant's breach." (*Id.* at p. 970 [cleaned up].)

Here, nothing in the nature of the alleged employment contract between Izard and the Institute suggests that the Institute should have foreseen the University's 2022 loss of Izard's research data at the time the Institute hired her in 2007. Not only is there no evidence that the Institute contemplated an asset transfer with the University in 2007, there is also no

9

evidence that once the Institute did contemplate the transaction, it should have foreseen that data would accidentally be deleted by the University after the transfer. The lack of foreseeability is also supported by the fact that a University employee, not an Institute employee, was responsible for the accidental deletion.

Accordingly, we conclude that Izard has failed to show a triable issue of material fact as to the existence of recoverable contract damages, and that the trial court therefore did not err in granting summary judgment to the Institute.

## DISPOSITION

The judgment is affirmed. The Institute is awarded its costs on appeal.


BUCHANAN, J.

WE CONCUR:


DATO, Acting P. J.


DO, J.